### GOMILA v. UNITED STATES.

#### No. 10255.

Circuit Court of Appeals, Sixth Circuit.

Feb. 17, 1947.

L. E. Gwinn and John E. Robinson, both of Memphis, Tenn. (Thomas L. Robinson, of Memphis, Tenn., on the brief), for appellant.

Thomas C. Farnsworth, of Memphis, Tenn. (William McClanahan, of Memphis, Tenn., and David London, Albert M. Dreyer and J. J. Schalet, all of Washington, D. C., on the brief), for appellee.

Before SIMONS, ALLEN and MARTIN, Circuit Judges.

ALLEN, Circuit Judge.

The appellant was charged under four counts of an indictment with violating General Ration Order 8 as amended, and 2nd Revised Ration Order 3, relating to ration stamps and sugar rationing, issued pursuant to the Second War Powers Act, 50 U. S.C., App.Sec. 633, 50 U.S.C.A.Appendix, § 633. The jury found him guilty under three counts, namely, (1) of acquiring, possessing, controlling, using and transferring 600 counterfeit consumer sugar ration stamps (No. 36) under circumstances which were a violation of G. R. O. 8, § 2.6 if the ration stamps had been genuine; (2) of acquiring and possessing in violation of the regulations 3,000 pounds of rationed sugar, as a result of the transfer of the same sugar ration stamps, in excess of his allotment of sugar as a registered industrial user of sugar, and (3) of receiving in violation of the regulations the 3,000 pounds of rationed sugar in exchange for the same sugar ration stamps, knowing or having reason to believe that the stamps were not validly issued and acquired in accordance with a ration order by appellant as the person tendering the ration document or stamps. The appellant was sentenced to one year of imprisonment under each count, the sentences of imprisonment to run concurrently, and to pay a fine of $2,000 under each of the counts.

Appellant contends that the motion for a directed verdict should have been sustained; that he was denied a fair trial; that the court committed reversible error in the admission of evidence, and that the statutes and regulations involved are invalid.

At the date charged in the indictment appellant owned two industrial establishments registered as industrial users of sugar with the Office of Price Administration for the State of Louisiana, the X-L Sales Company and the St. Bernard Syrup Company. These

were merely trade names, each establishment during this period being owned and operated individually by appellant. The X-L Sales Company had acquired five bottling companies in Louisiana and Mississippi in 1941 and 1942. Its allotment of sugar by December 15, 1944, was 435,939 pounds for the first quarter of 1945. The St. Bernard Syrup Company about the same time received 21,475 pounds of sugar. Allotments for the quarterly period, April, May and June, 1945, had been withheld from both of these concerns by the OPA, and each of them therefore had received no ration certificate for this period, and was short of sugar.

Since these establishments were industrial users, under the regulations appellant was an industrial user. 2nd Revised Ration Order 3, section 18.9. He had never been registered as any other type of user unless in his relationship as a consumer using sugar for personal use. Under 2nd Rev. R. O. 3, section 3.15, industrial users received not the individual stamps which were distributed to consumers, but certificates for sugar upon approval of their applications for allotments which were made quarterly. There was no provision in the regulations for the issuance of consumer coupons to industrial consumers for the purchase of sugar.

On June 29, 1945, at Memphis, Tennessee, the appellant bought from Harry Blen, a retail grocer, 30 bags of sugar, each containing 100 pounds, for which he paid the retail price of $7 per bag. He gave Blen 600 No. 36 consumer ration stamps, each with a value of five pounds. The stamps were affixed to six sheets with scotch tape or cellophane. Blen deposited the stamps in his bank, and they were examined at the verification center of the OPA and found to be counterfeit. Blen received a letter from the OPA, stating that the stamps were counterfeit, and telephoned the appellant in New York that he had to confer with the OPA that morning. Appellant claimed that the stamps were genuine, and told Blen to insist that the stamps were not counterfeit, and that he had received them from some one in Mississippi.

A qualified expert from the OPA office compared the stamps with genuine examples in court, and testified that all 600 were "a bad counterfeit." She pointed out the differences in the color and texture of the paper and in the process design which underlies the overprint, but stated in effect that the spurious character of the stamps would not be evident to a layman.

Appellant admitted that he transferred the stamps in the purchase of the sugar and paid the retail price. He contended that he was acting in the transaction as agent for the Peerless Sugar Company, a wholesaler in New York City which appellant said he owned. The Peerless was a wholesale grocery, and entitled to receive consumer stamps from retailers, but under the regulations it could not legally transfer them unless it was a nondepositor. G. R. O. 3A, Sections 3.1 and 3.4. Since it was a wholesaler, the Peerless Company was required to be a depositor, 2nd Rev. R. O. 3, section 5.10, and appellant testified to the effect that it was a depositor. Under 2nd Rev. R. O. 3, article VII, section 7.1 et seq., it was required to deposit consumer stamps in its account and to transfer the credits by check. 2nd Rev. R. O. 3, section 5.10. Appellant testified that he intended to use the sugar for his bottling business in Memphis. But he could not use consumer stamps to make purchases for industrial users. The appellant, with his extensive experience in these sugar transactions, evidently was found by the jury to be aware of all these circumstances. Also it may have been considered that a wholesaler in New York City is not likely to purchase sugar at a retail price in Memphis to be used by a Memphis concern.

A significant circumstance was that all of the 600 stamps were printed upon dark paper plainly different in color from the paper of the genuine stamps. The jury might well have considered that if 600 consumer stamps were received in legitimate consumer trade by a grocery, and were transferred to appellant, as he claimed, at least some of them would be genuine.

■ Appellant's principal defense was that the OPA had arbitrarily withheld allotments from the X-L Company and the St. Bernard Syrup Company, and that he was therefore entitled to buy the 3,000 pounds of sugar. Assuming, but not decid-

ing, that the action of the OPA officials at New Orleans was unjustified and arbitrary, this fact does not entitle the appellant to violate the regulations. Moreover, although appellant owned a number of bottling companies and had engaged in extensive business operations involving the use of large quantities of sugar, being represented during the years since rationing had been instituted by an auditor and by various attorneys, he took no steps to review the administrative action under which the allotments were withheld. 2nd Rev. R. O. 3, section 11.1(a). The jury was entitled to disbelieve his explanation of his possession of the counterfeit stamps and his transfer of them to Blen, which clearly was in violation of the regulations.

■ Appellant contends that the record presents no evidence of bad faith or evil purpose on his part; but it is sufficient if the prohibited act was intentional or voluntary. Kempe v. United States, 8 Cir., 151 F.2d 680, 688; Zimberg v. United States, 7 Cir., 142 F.2d 132, 137, certiorari denied, 323 U.S. 712, 65 S.Ct. 38, 89 L.Ed. 573. The use of the stamps under circumstances which would be a violation of the regulations if they were genuine is unlawful, irrespective of any knowledge that they were counterfeit. United States v. Tobin, 7 Cir., 149 F.2d 534.

■ Appellant's own testimony supports the verdict. The Peerless Sugar Company was not authorized to transfer consumer stamps in this transaction. Appellant as an industrial user had no authority to use or transfer them. The appellant as an industrial user had been granted no allotments for the second quarter of 1945, and hence acquired from Blen 3,000 pounds of sugar in excess of his allotment. The jury was justified in finding that appellant knew or had reason to believe that the stamps were not lawfully issued and that appellant knew that he had not lawfully acquired these consumer stamps in accordance with any ration order. The verdict and judgment are supported by the record.

■ Appellant contends that both the statute, 50 U.S.C., app. sec. 633 et seq., 50 U.S.C.A.Appendix, § 633 et seq., and the regulations promulgated thereunder (G. R. O. 8 and 2nd Rev. R. O. 3) are invalid. We are foreclosed from considering the attack upon the validity of the regulations. Such jurisdiction with reference to regulations promulgated under the Price Control Act is expressly conferred by the statute upon the Emergency Court of Appeals and the United States Supreme Court. Jatros v. Bowles, 6 Cir., 143 F.2d 453, 455, 456; Yakus v. United States, 321 U.S. 414, 64 S.Ct. 660, 88 L.Ed. 834.

■ The contention that the statute is void as a delegation of legislative power under Art. I, Section 1 of the United States Constitution in that it prescribes no legislative standards has been repeatedly overruled. Yakus v. United States, supra, 321 U.S. 414, 423, 64 S.Ct. 660, 88 L.Ed. 834. The subject was given extensive consideration by this court in O'Neal v. United States, 6 Cir., 140 F.2d 908, certiorari denied, 322 U.S. 729, 64 S.Ct. 945, 88 L.Ed. 1565, and we deem it unnecessary to repeat that discussion here.

■ Nor was appellant denied a fair and impartial trial. As to the evidence claimed to be prejudicial, in the principal instances relied upon by the appellant his own counsel brought the matter out, and amplified it by cross-examination. This was the case with reference to the letter read from the witness-stand, strenuously urged to require reversal. We examined this incident in some detail, for it is typical.

Appellant's counsel was cross-examining an OPA official as to the claimed delay in transferring the St. Bernard Syrup Company file from New Orleans to Memphis, as requested by appellant. Appellant's counsel handed the witness a file and told him to examine it and to tell the jury when "that St. Bernard Syrup Company file came back into Memphis." The witness answered: "I find in the file a letter dated December 17, 1945, to the District Rationing Executive, Office of Price Administration, Memphis, Tennessee, from Mr. Girard J. Fernandez,—that was on December 17th, in New Orleans, Subject Memphis Tobacco Company file. 'We are returning the file which was loaned by your office to Miss

Marian H. Fant, one of our investigators in the Food Section Enforcement Division in New Orleans. We have completed our case against F. X. Gomila, and the matter will be referred to the District Attorney here within a few days. We appreciate your cooperation in the matter and will try to keep you advised of the outcome of this case.' We received that letter within a day or two after December 17th."

Part of the letter was clearly responsive and relevant to the question. As it showed, the file had been sent from New Orleans on December 17. The objectionable part was the statement that the case against appellant would be "referred to the District Attorney here within a few days." Appellant's attorneys admitted having the file in their possession and did not deny the assertion of the government that they had it "at least over night." Presumably they were aware of this letter and its contents. No motion to strike it out was made, and cross-examination on the matter of the return of the file and lack of notice to appellant continued for several pages of the printed record. The Government offered the letter in evidence, but upon objection withdrew the offer. Appellant's counsel then, for the first time, asked the court to instruct the jury to disregard the statement, and the court charged the jury not to consider it for any purpose.

Instead of showing an attempt on the part of the Government to get unfair and prejudicial matter before the jury, we think this episode has the earmarks of an attempt on the part of appellant's experienced counsel to create reversible error. They had examined the file and could have cross-examined as to the date of the return of the file without eliciting the letter. The witness, told to examine the file on the stand, read the letter which gave the key to the answer of the question without the slight-est attempt being made to stop him before or at the time when he reached the objectionable matter. The error, if any, in admission of the evidence, was waived. United States v. Valenti, 2 Cir., 134 F.2d 362. If prejudice was created, it was created by appellant's attorneys.

██ Objections as to other phases of the testimony are also without merit. The statement of Thibaut, district manager of the OPA, to the effect that no allotment had been issued for the second quarter of 1945, pending the decision of the enforcement division of the OPA, was not objected to and no motion to strike was made. Appellant's attorneys brought the statement out on cross-examination and pursued the subject very thoroughly. The entire extract relied on in this connection was elicited not by the Government, but by appellant's attorneys. Moreover, the testimony was competent. It bore upon the question whether the OPA's action in withholding the allotment was arbitrary and unfair.

Other portions of the testimony claimed to create prejudice, when read in full context and in the light of the court's instructions to the jury, are not objectionable. The trial was fair.

██ Nor is there merit in the contention that the cross-examination by the Government went beyond the scope of the direct examination to the extent of creating prejudicial error. The ramifications of the appellant's ownership of various companies and bottling works were detailed by the appellant himself, and it was legitimate for the Government to examine broadly into these matters.

We find no reversible error in the admission or exclusion of evidence.

The judgment of the District Court is affirmed.