**Bobby Lee MOORE, Appellant,**

v.

**UNITED STATES of America,
Appellee.**

**No. 23906.**

United States Court of Appeals
Fifth Circuit.

Aug. 6, 1968.

Rehearing En Banc Denied Sept. 12, 1968.

David Lee Coker, A. Felton Jenkins, Jr., Atlanta, Ga., for appellant.

Charles B. Lewis, Jr., Asst. U. S. Atty., Atlanta, Ga., for appellee.

Before JOHN R. BROWN, Chief Judge, BELL, Circuit Judge, and BREWSTER, District Judge.

BREWSTER, District Judge:

This appeal is from a conviction for conspiracy to violate the federal laws pertaining to the illicit manufacture, transportation and distribution of distilled spirits. Fourteen persons in addition to the appellant were named in the indictment as conspirators but were not charged as defendants.[1]

---

1. This was apparently due to the fact that most of them had already been convicted by the State of Georgia for offenses growing out of this widespread whiskey operation being masterminded by the appellant. These co-conspirators were either runners or distributors working for appellant. The record shows numerous

The only contentions made here by appellant are that the nature of the employment by the government of James H. Jones as an informer constituted illegal entrapment as a matter of law under Williamson v. United States, 5 Cir., 311 F.2d 441 (1962); and that since there was insufficient evidence to support a conviction without the testimony of Jones and that of other witnesses claimed to have been secured as a result of his services, a judgment of acquittal should have been entered. These questions were not raised in the court below, but appellant insists that we consider them under the plain error provisions of Rule 52, F.R.Crim.P.[2]

The plain error rule was recognized by the federal courts long before the adoption of the Federal Rules of Criminal Procedure. United States v. Atkinson, 297 U.S. 157, 160, 56 S.Ct. 391, 80 L.Ed. 555, 557 (1936).[3] The rule is invoked only where the error complained of seriously affects the fairness or integrity of the trial and the appellate court must take notice of it to avoid a clear miscarriage of justice. Mims v. United States, 5 Cir., 375 F.2d 135, 147 (1967); Williamson v. United States, 5 Cir., 332 F.2d 123 (1964), and cases cited in footnote 12 therein on p. 132. We are of the opinion that no such exceptional circumstances exist in the present case because:

(1) The error alleged here is not the type contemplated by the plain error rule. It was one capable of being remedied by adequate justification or explanation. That the *Williamson* case so recognizes appears in the following quotation from the opinion 311 F.2d at page 444: *"Without some justification or explanation,* we cannot sanction a contingent fee agreement to produce evidence against particular named defendants as to crimes not yet committed. \* \* \*"* (Emphasis added). See also Hill v. United States, 5 Cir., 328 F.2d 988 (1964), and Sears v. United States, 5 Cir., 343 F.2d 139 (1965). It would be a strange doctrine, indeed, which would permit an accused to invoke the plain error rule for notice of a complaint that the government had failed to explain or justify a certain action on its part, when he had avoided the consequences of such an explanation or justification by not making any complaint of the action in the trial court.

(2) The alleged error was expressly waived by the mature and experienced lawyer appellant employed to conduct his defense in the trial court.[4] At the conclusion of the government's evidence in chief, the Court asked counsel for the defendant if he intended to make a motion to strike the informer's testimony under the Williamson rule, and indicated that if he did, the government would be permitted to offer any additional evidence it might have explanatory of any contingent fee arrangement. Defense counsel then mentioned that "perhaps under the rulings that were made subsequent to the Williamson case, they have somewhat modified the

---

instances of state arrests of these persons with large quantities of appellant's whiskey in the cars they were driving while the operation was under federal surveillance. It does not appear whether the surveillance being conducted by the State was in any way connected with that by the federal officers.

2. Rule 52(b), F.R.Crim.P., provides: "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."

3. "In exceptional circumstances, especially in criminal cases, appellate courts, in the public interest, may, of their own motion, notice errors to which no exception has been taken, if the errors are obvious, or if they otherwise seriously affect the fairness, integrity or public reputation of judicial proceedings." United States v. Atkinson, 298 U.S. at 160, 56 S.Ct. at 392.

4. The lawyers who are representing the appellant here had no connection with the trial of the case. The attorney who handled the defense in the court below does not appear for appellant on appeal.

rule",[5] and that, "I expect probably that my case might be in worse shape if I made that motion, so I will not make it." This decision deliberately made as a part of defense trial strategy, whether wise or not,[6] was binding on appellant and constituted a waiver of the matters now asserted by him here. Gomila v. United States, 6 Cir., 159 F.2d 1006, 1010 (1949); Kahla v. United States, 5 Cir., 243 F.2d 128 (1957); United States v. Aulet, 7 Cir., 339 F.2d 934 (1964); Williams v. Beto, 5 Cir., 354 F. 2d 698, 705 (1965).

We do not mean to imply by what is said above that we are of the opinion that the record in this case shows the character of arrangement with the informer that was condemned by Williamson, or that there was a lack of legitimate justification or explanation of the arrangement, if such had been required.

The basis for the reversal in the Williamson case was that the contingent fee arrangement with the informer for the conviction of specific persons as to crimes not yet committed, "might tend to a 'frame up,' or to cause an informer to induce or persuade innocent persons to commit crimes which they had no previous intent or purpose to commit." The informer there "made" cases on Williamson by seeking him out and purchasing non-tax paid whiskey from him. On the other hand, at the time Jones was working on the present case, he was and had been employed generally by the Alcohol and Tobacco Tax Unit as an undercover agent to work on cases involving liquor violations. His employment

called for payment of a per diem and of a reward in cases he completed. Those arrangements were not directed at any particular individuals. His reward of $350.00 in this case was paid before the trial. Jones did nothing that would have been even remotely calculated to induce an innocent person to commit a crime which he had no purpose to commit. The solicitation here came from appellant rather than from Jones. Appellant was in the moonshine whiskey business on a big scale. He had been buying his whiskey in wholesale quantities for resale, and was trying to set up three stills to help take care of his retailers. Jones owed appellant about five hundred dollars on a gambling debt, and appellant knew Jones had served a sentence for violation of the Georgia liquor laws. He proposed to Jones that he go to work at the stills to pay off the gambling obligations. Jones secured the consent of the government agents under whom he was working, and accepted appellant's proposition. At least one of the stills was already in operation at that time. His capacity for the government was in the nature of an observer, rather than of a person "making" a case. He reported every day or so on the activities of appellant and his runners to enable the agents to keep them under close surveillance. The proof of appellant's guilt was overwhelming. It came from numerous witnesses in addition to Jones. Appellant denied that he had had any connection whatever with traffic in illicit whiskey. There was no indication in the record that appellant

---

5. This statement evidences the fact that defense counsel was familiar, not only with *Williamson*, but also with *Hill*, and *Sears*, supra.

6. While it is not necessary, the record in this case shows that defense counsel had more than adequate basis for his decision. As is indicated in the body of the opinion, the evidence was overwhelming that appellant was in the illicit whiskey business in a big way. The proceedings on the sentence hearing show that he had been involved in illicit whiskey operations for a long time. He

had been tried on a whiskey case in the federal court in 1960. Between that time and the present transaction, he had been convicted in a state court on five counts charging violation of the Georgia liquor laws. When counsel said that "my case might be in worse shape if I made that motion," he evidently had in mind that under the Hill and Sears cases, the government would have had a right to show the knowledge its agents had as to the extent and length of time appellant had been involved in the illicit liquor business at the time they made the challenged arrangement with informer Jones.

was convicted on the basis of any conduct which was induced by any person connected with law enforcement. The appellant got more than he was entitled to when the trial court charged on entrapment.

Affirmed.

JOHN R. BROWN, Chief Judge (dissenting):

Despite the aberration of my joining in *Williamson* on its second round here, 5 Cir., 1965, 340 F.2d 612, I am now more than ever convinced of the soundness of my special concurrence in the reversal of the original conviction in Williamson v. United States, 5 Cir., 1962, 311 F.2d 441, 445. The great United States government is using one of the oldest, basest, and most telling devices to put the finger of guilt on a suspect—thirty pieces of silver. It bargains for proof by a contingent fee, receipt of which, to the certain knowledge of those who accept such commissions, is dependent upon successful prosecution leading to conviction.

James Jones (a convicted moonshiner out on probation) was bought by the Government for the princely sum of ten dollars a day, gasoline expenses, and the promise of a reward, to contact major violators in the whiskey business in a wide seven-state area. On completion of the terms of his employment he was paid $350, prior to Moore's trial. Under his engagement with the United States, Jones went to work for Moore and helped construct the stills which formed the basis of this conspiracy. I cannot improve on this contingent-fee-informer's characterization of his employment. The grammar is bad, the syntax faulty, but the message is clear. "[O]n this here particular case that I am working, that I, when I was working, when we were working conspiracy on Bobby Moore, now I made ten dollars a day, and after that I completed the conspiracy, my reward were three hundred fifty dollars."

But this witness-for-hire did not cease there. Most, if not all, of the Government witnesses were obtained through information surreptitiously supplied by Jones. He was the key man. He made the case. He did both by what he said was said and what he said he saw. He did it also by identifying and describing the role of all the other Government witnesses.

The Court concludes that Moore cannot now complain because his counsel—faced with a Hobson's choice—rejected the offer. I agree the Trial Court cannot be put in error because a chance was given to object to the testimony of the informer whose credibility meant money in his pocket. I likewise agree with the judgment of his lawyer—he had no choice.

The error is not that of the Trial Judge or of the trial attorney—but of the Government for engaging in this revolting conduct, infected as it is with the dangers inherent in paying an admittedly weak individual, *contingent* upon his production of evidence. It is unimportant whether the "reward" is paid before or after trial—it is paid depending on the procurement of evidence. It is a pure euphemism to say, as the Government does, that Jones was not hired to make a case on Moore but that he was a sort of non-civil service worker in the cause of moonshine prevention. His mission was not to earn money by the sweat of his brow. He was "working conspiracy" and when he "completed the conspiracy" the Nation showed its gratitude.

The Court's holding now forms a water-tight basis for the Government to continue the use of this obnoxious contingent fee arrangement. If he objects the court must exclude the testimony. But when he does so the Government can resist by making a *Williamson* justification, 311 F.2d at 444, and that lowers the bars.

Government ought not do such things. Citizens ought not be put to that choice.

I would reverse.