676 P.2d 257

**STATE of New Mexico,
Plaintiff-Appellee,**

v.

**Andy CHAVEZ, Defendant-Appellant.**

No. 7192.

Court of Appeals of New Mexico.

Oct. 6, 1983.

Certiorari Quashed Jan. 30, 1984.

Paul Bardacke, Atty. Gen., Marcia E. White, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Janet E. Clow, Chief Public Defender, Henry R. Quintero, Asst. Appellate Defender, Santa Fe, for defendant-appellant.

OPINION

DONNELLY, Judge.

Defendant appeals from convictions of criminal sexual penetration in the third degree contrary to NMSA 1978, § 30–9–11(C), and aggravated burglary contrary to NMSA 1978, § 30–16–4 (Repl.Pamp.1981); both offenses committed on a person over 60 years of age contrary to NMSA 1978, § 31–18–16.1(A)(1) (Repl.Pamp.1981). Three assignments of error are raised on

appeal: (1) allowing a police officer to sit at counsel table during trial; (2) improper admission of evidence and jury argument; and (3) enhancement of sentence for aggravated circumstances. Other issues listed in the docketing statement but not briefed are deemed abandoned. *State v. Sanchez,* 98 N.M. 428, 649 P.2d 496 (Ct.App.1982).

During the early morning of October 8, 1982, the victim, a 76 year-old woman, was in her kitchen when her locked screen door was forcibly broken and she was violently attacked and sexually assaulted. Immediately following the attack the assailant spoke briefly to the victim and left. The victim then phoned the police and was thereafter taken to the hospital. Later the same day, the victim identified the defendant in a police line-up.

Shortly after the attack, a neighbor, Lute Doty, observed defendant's car parked down the street. Doty gave police a physical description of the young man he saw walk to the car and identified the automobile seen by him as a faded grey Chevrolet or Oldsmobile, approximately 1950 model, missing a front bumper, with rust or primer spots on the hood and with a two-toned top.

Defendant denied any culpability and at trial asserted that he had been misidentified. He testified that after he had gotten off work the evening before, he and several friends were partying until about 4:00 or 5:00 a.m. Afterwards, he had been taken home by a companion. Defendant then went out again to get breakfast and borrowed a car belonging to Andy Torres because defendant's car had a flat tire. After breakfast, defendant was on his way to the Torres residence to return the car when he was arrested.

The State moved, prior to trial, for permission to have an investigating officer, Detective Joe Thomas of the Clovis Police Department, seated at counsel table with the prosecutor during the trial in order to assist counsel with the State's physical evidence. Over defense counsel's objection, the motion was granted.

During defendant's jury trial, the prosecution called Lawrence Renner, a forensic serologist, to testify concerning the traces of blood found on the victim and her clothing. He testified concerning the tests he performed on the victim's clothing and blood and saliva samples. Over defendant's objection, the court permitted the State to ask about the percentages of blood typing for the population as a whole, considering, however, that variations exist for differing ethnic groups. At closing argument the prosecutor argued at length, without objection, concerning Renner's testimony of blood type frequencies, blood type percentages and its applicability to defendant.

Following deliberations, the jury returned verdicts convicting the defendant of criminal sexual penetration and aggravated burglary. The jury also returned special interrogatories concerning each charge, finding that the victim at the time of the offenses was sixty years of age or older, that she had been intentionally injured by defendant, and that she had suffered painful temporary disfigurement or temporary loss or impairment of the functions of a member or organ of her body as a result of the commission of such crimes.

*Exclusion of Witness*

Responding to the State's motion to allow Detective Thomas to sit at counsel table, the defendant moved to exclude all witnesses from the courtroom except during their testimony pursuant to NMSA 1978, Evid.R. 615 (Repl.Pamp.1983). The trial court granted the State's motion and denied defendant's motion to exclude Thomas from the courtroom. Thomas testified twice during trial, once during the State's case-in-chief and once during rebuttal.

Defendant contends the presence of Thomas in the courtroom during trial was prejudicial and prevented defendant from exposing the inconsistencies between his testimony and that of other prosecution witnesses.

Rule 615 of the New Mexico Rules of Evidence provides:

*At the request of a party the judge shall order witnesses excluded so that they cannot hear the testimony of the other witnesses, and he may make the order of his own motion.* This rule does not authorize exclusion of

(1) a party who is a natural person, or

(2) an officer or employee of a party which is not a natural person designated as its representative by its attorney, or

(3) a person whose presence is shown by a party to be essential to the presentation of his cause.

[Emphasis supplied.]

■ Rule 615 is identical with Rule 615 of the Federal Rules of Evidence. The history of Rule 615 reveals that the second exception specified therein includes a government investigative agent. *United States v. Boyer,* 574 F.2d 951 (8th Cir. 1978); *United States v. Woody,* 588 F.2d 1212 (8th Cir.1978). Prior to the adoption of Rule 615, a motion to sequester or exclude witnesses from the courtroom during trial was treated as a matter within the judge's sound discretion. *State v. Romero,* 69 N.M. 187, 365 P.2d 58 (1961); *State v. Carrillo,* 82 N.M. 257, 479 P.2d 537 (Ct. App.1970). Rule 615 altered this practice by making exclusion a right effective on the demand of either of the parties. *United States v. Johnston,* 578 F.2d 1352 (10th Cir.1978), *cert. denied,* 439 U.S. 931, 99 S.Ct. 320, 58 L.Ed.2d 325 (1978); *see also* Annot., 48 A.L.R.Fed. 484 (1980). Upon request for exclusion of witnesses, the party seeking to have witnesses remain has the burden of proving to the court that an exception should be made. *Government of Virgin Islands v. Edinborough,* 625 F.2d 472 (3d Cir.1980).

■ Allowing counsel for the State to have an investigative agent at counsel table throughout the trial even though the agent is or may be a witness is an exception to the rule of exclusion. *United States v. Shearer,* 606 F.2d 819 (8th Cir. 1979); 48 A.L.R.Fed. at 486; 3 J. Weinstein, *Weinstein's Evidence* § 615[02] (1982). The presence of an investigative agent during trial may be important to the

State when the case is complex or involves specialized subject matter. *In re United States,* 584 F.2d 666 (5th Cir.1978); *see also* Annot., 87 A.L.R.3d 238 (1978). When an exception is granted to the rule of exclusion the trial court, under NMSA 1978, Evid.R. 611 (Repl.Pamp.1983), can order that the police officer be called first in order to avoid giving the prosecutor an unfair advantage or the appearance that the State is being favored. *See United States v. Frazier,* 417 F.2d 1138 (4th Cir. 1969). Under the facts herein the trial court did not abuse its discretion in permitting the exception. Moreover, our review of the record fails to show any prejudice resulting to defendant from the court's ruling. *See Government of Virgin Islands,* 625 F.2d at 473.

### Blood Type Evidence

Lawrence Renner, a scientist with the Police Crime Laboratory, testified as an expert forensic serologist. He testified as to the tests he performed on evidence taken from the victim, and as to findings concerning items of clothing and blood and saliva standards of both the victim and defendant. He testified that he was able to type both the victim and defendant for a certain enzyme group known as PGM. He stated that both the victim and defendant had type "O" Blood; the victim had PGM type 2–1, and defendant had PGM type 2.

Prior to Renner's testimony, defendant moved to exclude any opinion testimony concerning mathematical percentages involved in identifying the defendant as belonging to a certain percentage of the population with the same blood factors. The witness testified that particular blood type components and enzyme factors appear generally in the entire population in certain percentages; however, he indicated he did not know how those percentage figures related to specific racial or ethnic groups, or whether there were particular studies relating to New Mexico in particular. Renner had taken an FBI course in enzyme grouping and had figures from charts generally relied upon in the scientific communi-

ty showing the percentages of enzyme groupings based on the population of the United States as a whole.

Renner testified that forty-five percent of the population of the United States had type "O" blood and 6% had PGM 2. He stated when these figures were multiplied together, the result was 2.7% and defendant came within this percentage.

On appeal, defendant argues that Renner's testimony that defendant came within 2.7% of the population was reversible error. Defendant also argues this opinion was speculative. He relies upon *State v. Sneed*, 76 N.M. 349, 414 P.2d 858 (1966), contending that mathematical estimates are inadmissible as evidence to identify a defendant in a criminal proceeding so long as the odds are based on estimates the validity of which have not been demonstrated.

Expert testimony concerning blood-grouping tests have generally been held admissible in evidence. *See State v. Washington*, 229 Kan. 47, 622 P.2d 986 (1981); *People v. Bush*, 103 Ill.App.3d 5, 58 Ill.Dec. 482, 430 N.E.2d 514 (1981); *People v. Gillespie*, 24 Ill.App.3d 567, 321 N.E.2d 398 (1974); *see also* Annot. 2 A.L.R.4th 500 (1980). Blood group tests are generally accepted in the scientific community as valid and reliable if properly performed. *People v. Romero*, 42 Colo.App. 20, 593 P.2d 365 (1978); *see generally State v. Brierly*, 109 Az. 310, 509 P.2d 203 (1973); *State v. Clayton*, 646 P.2d 723 (Utah 1982).

As stated in Annot., 2 A.L.R.4th 500 at 506–507:

While the most familiar use of * * * [blood-grouping] tests in judicial proceedings is in disputed paternity cases, blood-grouping evidence has, in many jurisdictions, become an important piece of evidence in criminal cases, particularly those involving prosecutions for crimes of violence.

It should be observed that while the results of blood-grouping tests can establish that a blood sample, such as a stain on an article of clothing, is not the blood of a particular person, it cannot conclusively establish that such blood is the blood of a particular person. The most that can be said is that the blood in question could be that of any one of a large number of persons, including the individual in question.

\* \* \* \* \* \*

The results of blood-grouping tests have also been held to be admissible for the purpose of corroborating other evidence that a crime in fact occurred, and for the purpose of refuting a defense tendered by the accused. * * *

It should be observed that all of the cases which have held the results of blood-grouping tests to be admissible have indicated that such evidence is admissible only in corroboration of other evidence. Thus, such evidence is admissible on the question of identity, but is totally incompetent, by itself, to establish the accused's identity. Such evidence, therefore, is not conclusive of the accused's guilt or of any fact or element of the case. But, the courts have held such evidence to be admissible, and have left the weight to be accorded such evidence to the determination of the jury.

The determination of the competency and qualifications of an expert witness is generally addressed to the sound discretion of the trial court. *State v. Garcia*, 76 N.M. 171, 413 P.2d 210 (1966); NMSA 1978, Evid.R. 702. Testimony by a properly qualified expert is admissible if the evidence would assist the fact finder in determining an issue. *State v. Elliott*, 96 N.M. 798, 635 P.2d 1001 (Ct.App.1981).

Defendant's attack on the opinion evidence of the witness was not directed to the validity of the figures or the witness's test methods. The essence of defendant's argument is that the data given is not relevant. Objections, however, to blood type frequency statistics are generally held to go only to the weight of the evidence and not to its admissibility. *See State v. Washington; State v. Rolls*, 389 A.2d 824 (Me.1978); *State v. Clayton*, 646 P.2d 723 (Utah 1982).

■ Defendant also contends that the prosecutor improperly argued the effect of Renner's percentage testimony to the jury and misapplied the data. The prosecutor *inter alia* stated:

I leave it to you ladies and gentlemen, to use your common sense because that's what you're charged with that's why we have juries. If Andy Chavez fits 2.7% of the population can we cut that in half and say 1.35 because half the population are women and a woman did not rape [the victim]. So are we now down to 1.35, that Andy Chavez fits in?

I leave it to your judgment ladies and gentlemen and your common sense. Can you break it down further in your mind. How many of the 1.35% of the population fits in Andy Chavez' age group? What? I don't know. You can take a fifth, a fourth, you can take a half to be fair to him. To give him every benefit of a doubt. Can you cut the 1.35 down to .6, 7 something? We're now less than 1%.

I leave it to your judgment ladies and gentlemen and your common sense and your knowledge of your community, your world. Can we break it down further? To say that of that .6% how many are hispanic in Clovis? What? Well, a fifth, fourth, a half, give him the benefit of the doubt. Can we break that down in half again to .3%? One-third of 1%. That's where Andy Chavez fits, under the facts of this case. Now is that beyond a reasonable doubt. That's almost to a maximum certainty.

No objection, however, was voiced to the prosecutor's closing argument at trial. Absent a showing of fundamental error, error may not be predicated upon the argument of counsel unless a timely objection was voiced, setting forth the specific ground or basis relied upon. *See generally, State v. Casteneda,* 97 N.M. 670, 642 P.2d 1129 (Ct.App.1982); NMSA 1978, Evid.R. 103. *Compare State v. Vallejos,* 86 N.M. 39, 519 P.2d 135 (Ct.App.1974); NMSA 1978, Code of Professional Responsibility R. 7-102(A)(1), 7-106(C)(1) (Repl.Pamp.1982). The error here complained of does not constitute fundamental error. The gist of the prosecutor's argument emphasized the importance of the evidence concerning blood typing and its applicability to defendant. Although we note the mathematical references in the prosecutor's argument were not entirely arithmetically accurate and his argument attempting to place defendant within certain population percentages confused differing blood type statistics, defendant made no objection to this argument. Moreover, prior to closing arguments the trial court instructed the jury pursuant to NMSA 1978, UJI Crim. 1.04 (Repl.Pamp.1982), that what is said in the arguments of counsel is not evidence. We find no error.

### Enhancement of Sentences

Predicated upon the jury verdicts, the trial court sentenced defendant for the commission of criminal sexual penetration in the third degree and aggravated burglary. Pursuant to NMSA 1978, § 31–18–16.-1(A)(1) (Repl.Pamp.1981), the court enhanced defendant's basic sentences because the victim was over sixty years of age. The trial court also, under authority of NMSA 1978, § 31–18–15.1 (Repl.Pamp. 1981), imposed an additional one year enhanced sentence for each offense.

In *State v. Mead,* 100 N.M. 27, 665 P.2d 289 (Ct.App.1983), *cert. granted,* 22 SBB 787 (1983), this Court held the sentencing enhancement provision under Section 31–18–15.1 unconstitutional and void for vagueness. *See also State v. Segotta,* 100 N.M. 18, 665 P.2d 280 (Ct.App.1983). In *State v. Segotta,* 100 N.M. 498, 672 P.2d 1129 (1983), the Supreme Court reversed the Court of Appeals and upheld the constitutionality of the enhanced sentencing statute. No attack is made herein upon the enhancement of the sentence provisions imposed under Section 31–18–16.1(A)(1), and involving the perpetration of crimes of violence upon a person 60 years of age or older.

The trial court is directed to take such appropriate action with regard to the Supreme Court's ruling in *Mead* and *Segotta* concerning the enhancement of defendant's sentence under Section 31–18–15.1. In all

other respects, defendant's convictions are affirmed.

IT IS SO ORDERED.

NEAL and BIVINS, JJ., concur.