784 P.2d 1006

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**James NEWMAN, Defendant–Appellant.**

No. 10848.

Court of Appeals of New Mexico.

Oct. 17, 1989.

Certiorari Denied Dec. 21, 1989.

Hal Stratton, Atty. Gen., William McEuen, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Jacquelyn Robins, Chief Public Defender, Sheila Lewis, Asst. Appellate Defender, Santa Fe, for defendant-appellant.

## OPINION

DONNELLY, Judge.

Defendant appeals his convictions of two counts of criminal sexual contact of a child under thirteen, contrary to NMSA 1978, Section 30–9–13(A)(1) (Repl.Pamp.1984). Five issues are raised on appeal: (1) whether the trial court erred in allowing the child's therapist to testify as an expert witness; (2) whether defendant received effective assistance of counsel; (3) claim of unauthorized contact between the trial judge's secretary and the jury; (4) whether there was sufficient evidence to support defendant's convictions; and (5) whether defendant was denied due process of law. An additional issue, asserting that the trial court erred in failing to declare a mistrial sua sponte, was not raised below, or addressed in the docketing statement or memorandum in opposition to summary affirmance and thus has not been properly preserved on appeal. *See State v. Aranda*, 94 N.M. 784, 617 P.2d 173 (Ct.App.1980) (where issue not raised in docketing statement, it may not be raised for the first time in brief in chief unless pursuant to recognized exceptions). *See also State v. Rael*, 100 N.M. 193, 668 P.2d 309 (Ct.App.1983).

Defendant's twelve-year-old daughter lived with him during the summer of 1985. At the end of the summer the child requested and was permitted to remain with her father in Albuquerque during the 1985–86 school year. In June 1986 the child went to live with her stepmother in El Paso, Texas, where, on October 13, 1986, she reported that defendant had sexually molested her during the summer of 1985. The child's stepmother after being told of defendant's actions, immediately took the child to see Jean Kiddney, a therapist experienced in counseling victims of sexual abuse with the El Paso Guidance Center. In December 1986 the child was interviewed in El Paso by a New Mexico police officer and gave a statement implicating defendant. The child told the officer that she had reported the incident to Frances Hubbard, her paternal grandmother, shortly after the occurrence and that she had also reported the occurrence to an Albuquerque schoolmate, D.W., in January 1986. Defendant was indicted by the grand jury on May 6, 1987, and following a jury trial was convicted of the charges which are appealed herein.

## I. Qualifications and Testimony of the State's Expert Witness.

The state gave notice that it would call Jean Kiddney, a counselor and therapist at the El Paso Guidance Center, to testify at trial. Following the child's report to her stepmother of the alleged sexual abuse, Kiddney interviewed the child and provided psychological counseling.

Defendant moved to preclude the state from calling Kiddney as an expert witness, arguing that Kiddney was not qualified to testify as a counselor or child therapist. The court reserved ruling on the issue until it had an opportunity to hear the witness testify as to her credentials.

At trial defendant questioned the witness on voir dire concerning her qualifications as a child therapist. On voir dire Kiddney testified that she was not required to undergo any board examination or certification procedure to practice as a therapist in the state of Texas, held no certification in any state, and had never been qualified to testify in any court of any jurisdiction although she had testified at administrative hearings. Her academic credentials include a bachelor's degree in sociology and a master's degree in guidance and counseling, and she had worked one year as an investigator for the Texas Department of Human Services followed by approximately four years as a counselor and therapist in sexual abuse and other cases. Kiddney

administered no clinical or other tests to the child.

At the conclusion of voir dire, defendant renewed his objection to Kiddney's being allowed to offer opinions in the areas permitted by the court. Defendant argued that the witness was not qualified as an expert counselor, therapist, or psychologist and that the probative value, if any, of the witness's testimony was outweighed by its prejudicial effect. The trial court sustained defendant's motion in part, ruling that the witness would not be permitted to testify as to her belief concerning whether the child was truthful about the alleged sexual incident or whether the child's condition was caused by sexual abuse. However, the trial court held that the witness could state her opinion concerning whether the child's behavior was consistent with that of a sexually abused child. Defendant sought and was granted a continuing objection to any testimony by the witness describing her observations while treating the child, or whether these observations were consistent with the witness's experience, knowledge, and education concerning child abuse victims.

Defendant contends that Kiddney was not qualified by education or experience to testify concerning behavioral patterns of sexually abused children or that the child in question had exhibited behavior consistent with that of a sexually abused child. Defendant argues that the witness's testimony concerning the behavorial patterns of sexually abused children and whether the child's behavior was consistent with such patterns was tantamount to offering a medical diagnosis and that since the witness was not qualified as a psychologist or a psychiatrist, it was error to permit such testimony.

It is the responsibility of the trial court to determine whether a witness is qualified to testify as an expert. *State v. Garcia*, 76 N.M. 171, 413 P.2d 210 (1966); *State v. Chavez*, 100 N.M. 730, 676 P.2d 257 (Ct. App.1983). Absent a showing of abuse, the trial court's discretion will not be overturned on appeal. *Id.* The applicable rule is SCRA 1986, 11-702, which states,

If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may testify thereto in the form of an opinion or otherwise.

Under Rule 11-702, a prerequisite to permitting a witness to testify as an expert is a showing (1) that the proffered witness has sufficient qualifications to be considered an expert in some specialized knowledge and (2) that the specialized knowledge of the witness will assist the jury in determining a fact or issue in the case. *See* 3 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 702[02], at 702-18 to 702-20 (1988).

■ Testimony concerning the general characteristics of sexually abused children is not limited to testimony from a psychologist or psychiatrist. *See, e.g., Poyner v. State*, 288 Ark. 402, 705 S.W.2d 882 (1986) (expert with bachelor's in special education, master's in school psychology, and three-and-one-half years experience as a school counselor with twenty-five to fifty child abuse cases permitted to testify concerning child abuse in general); *Wheat v. State*, 527 A.2d 269 (Del.1987) (witness with master's degree in clinical work and experience as child abuse specialist for Congress and with experience in treating or counseling approximately seventy-five sexually abused children permitted to testify as expert in field of intrafamily sexual abuse). Under the record herein, Kiddney's training, education, and experience were sufficient to allow her to testify on the general characteristics observed in child abuse victims. Accordingly, the trial court did not abuse its discretion in accepting her as an expert in this area.

Defendant also argues that Kiddney's testimony was more prejudicial than probative and that it was used by the state to convince the jury of the truthfulness of the child. To support this contention, defendant relies primarily on cases in which the testimony under review concerned the behavioral patterns of post traumatic stress

disorder (PTSD) and rape trauma syndrome (RTS).[1] Although the terms RTS and PTSD were never used in the instant case, defendant claims that Kiddney's testimony was analogous to the expert testimony given in those cases, and he points out that New Mexico has previously upheld a trial court's preclusion of this type of testimony. *See State v. Bowman*, 104 N.M. 19, 715 P.2d 467 (Ct.App.1986) (no abuse of discretion in excluding PTSD and RTS testimony by psychologist where rape could not be identified as the specific stress factor causing the victim's symptoms).

■ *Bowman* does not, however, require that Kiddney's testimony be excluded. *Bowman* assumed, but did not decide, that PTSD or RTS testimony was admissible. In the instant case, the question before the court is not whether RTS and PTSD testimony was admissible but whether the testimony presented by Kiddney relating to the nature of the reaction of a child victim of sexual abuse was admissible. Kiddney's testimony described the child's on-going behavior, including aggression, problems with academic studies and relationships, and lengthy delay in reporting the incident, which she indicated were frequently exhibited by child victims of sexual molestation.

As observed in *State v. Moran*, 151 Ariz. 378, 381, 728 P.2d 248, 251 (1986), "[d]eciding whether expert testimony will aid the jury and balancing the usefulness of expert testimony against the danger of unfair prejudice are generally fact-bound inquiries uniquely within the competence of the trial court." [Citations omitted.] In *People v. Bledsoe*, 36 Cal.3d 236, 247–48, 681 P.2d 291, 298, 203 Cal.Rptr. 450, 457 (1984), the court observed that expert testimony in child abuse cases plays a "useful role by disabusing the jury of some widely held misconceptions about rape and rape victims, so that it may evaluate the evidence free of the constraints of popular myths."

Under the record before us, we find no error in the admission of Kiddney's testimony. Here, the trial court determined that expert testimony on child sexual abuse was admissible to assist the jury in understanding the behavior of sexually abused children, a subject beyond the knowledge of an ordinary juror. We agree.

The courts in several jurisdictions have upheld the admissibility of expert testimony concerning the reaction of victims of child abuse. *See Sexton v. State*, 529 So.2d 1041 (Ala.Crim.App.1988) (clinical psychologist testified concerning generally accepted symptoms of a child sexual abuse victim including fear and anxiety, increased knowledge of sexual issues, delayed reporting); *People v. Payan*, 173 Cal.App.3d 27, 220 Cal.Rptr. 126 (1985) (physician's testimony on child sexual assault syndrome was proper, even on the truthfulness of the victims); *State v. Myers*, 359 N.W.2d 604 (Minn.1984) (evidence of typical child abuse behavior permissible despite previous holding that RTS evidence was inadmissible); *Townsend v. State*, 103 Nev. 113, 734 P.2d 705 (1987) (probative value of expert testimony that child under the age of fourteen had been sexually assaulted outweighed prospect of unfair prejudice); *State v. Middleton*, 294 Or. 427, 657 P.2d 1215 (1983) (permissible for qualified expert to give testimony on the reaction of the typical child victim of familial sexual abuse but not on whether the victim is telling the truth); *Compare State v. Moran* (allowing expert to explain seemingly strange behavior of child sexual abuse victims, but not permitting expert opinion that victim was in fact sexually abused); *State v. Myers*, 382 N.W.2d 91 (Iowa 1986) (expert testimony concerning the veracity of children about sexual abuse held inadmissible); *State v. Catsam*, 148 Vt. 366, 534 A.2d 184 (1987) (upholding admissibility of social worker's expert testimony regarding profile or syndrome evidence of child abuse victim, but not allowing opinion evidence that sufferers of the syndrome do not fabricate claims of sexual abuse).

---

1. PTSD and RTS describe recuperative stages through which trauma victims pass following the trauma, *see* Burgess & Holmstrom, *Rape Trauma Syndrome*, 131 Am.J.Psychiatry 918 (Sept. 1974); Fox & Scherl, *Crisis Intervention with Victims of Rape*, 17 Social Work 37 (Jan. 1972).

■ Testimony by a properly qualified expert is admissible if the evidence would assist the jury in its deliberations. *State v. Chavez.* The fact that relevant evidence may tend to prejudice the defendant is not in and of itself grounds for excluding it. *State v. Singleton,* 102 N.M. 66, 691 P.2d 67 (Ct.App.1984); SCRA 1986, 11-403. Admission or exclusion of evidence is discretionary with the trial court. *State v. Worley,* 100 N.M. 720, 676 P.2d 247 (1984). An abuse of discretion is found when the trial court's decision is contrary to logic and reason. *Davila v. Bodelson,* 103 N.M. 243, 704 P.2d 1119 (Ct.App.1985). We find no abuse of discretion in the trial court's determination that the probative value of Kiddney's testimony outweighed its capacity to prejudice the defendant.

■ Defendant further argues that Kiddney's unsolicited testimony as to the truthfulness of the child violated the court's order prohibiting such testimony and could not be cured by the court's admonition to the jury to disregard the comments. This argument is raised for the first time on appeal. The record shows that the comment was not solicited by the state and although an objection was made the third time Kiddney stated she believed the truthfulness of the child, defendant's attorney did not move for a mistrial and instead sought and was granted a cautionary instruction to the jury. Defense counsel stated:

> I would like an instruction at this point in time to the jury that it's up to them to decide whether [the child] is telling [the] truth or not, whether Ms. Kiddney believes that [the child] is telling [the] truth.

■ The trial court admonished the jury to disregard the witness's testimony regarding her belief as to the truthfulness of the child's statements concerning the alleged sexual abuses by her father. Thus, under the facts before us defendant cannot complain that he was not accorded the relief he specifically sought. Generally, a prompt admonition from the court to the jury to disregard and not consider inadmissible evidence sufficiently cures any prejudicial effect which might otherwise result. *State v. Gardner,* 103 N.M. 320, 706 P.2d 862 (Ct.App.1985). Absent a showing of plain or jurisdictional error, a reviewing court will not reverse a trial court on a ground that the trial court was not asked to consider nor had the opportunity to rule upon. *State v. Casteneda,* 97 N.M. 670, 642 P.2d 1129 (Ct.App.1982). Moreover, the decision of whether to grant a mistrial rests within the sound discretion of the trial court. *State v. Gardner.* A reviewing court will generally refuse to reverse a trial judge for failing to grant a mistrial sua sponte. Whether a defendant wishes a mistrial, as opposed to only a curative instruction, is a tactical matter. Defense counsel may well have thought that Kiddney's testimony had little impact on the jury and may have thought that the jury seemed sympathetic to defendant or that particular testimony was helpful to the defendant. The United States Supreme Court has recognized that the defendant has a right, absent a showing of manifest necessity, to have the trial go on to its conclusion. *See Arizona v. Washington,* 434 U.S. 497, 503–04, 98 S.Ct. 824, 829, 54 L.Ed.2d 717 (1978); *see also State v. DeBaca,* 88 N.M. 454, 541 P.2d 634 (Ct.App. 1975). Therefore, when a mistrial is declared over the defendant's objection, the defendant cannot be retried unless the mistrial was "manifestly necessary." *State v. DeBaca.*

## II. *Ineffective Assistance of Counsel.*

Defendant asserts that he was deprived of due process of law because his counsel rendered ineffective assistance of counsel and fell below the standard required of defense counsel. Specifically, defendant contends he demonstrated ineffective assistance of counsel by his attorney's failure to seek a mistrial based on the testimony of Kiddney and the witness's failure to follow the ruling of the court that she should not testify concerning whether she believed the child was truthful about the alleged sexual incident. Defendant concedes that a prompt admonition generally cures the claimed error, *see State v. Vialpando,* 93 N.M. 289, 599 P.2d 1086 (Ct.App.1979), but

argues that here the court's admonishment did not remove the prejudice from the jurors' minds, *see State v. Rowell*, 77 N.M. 124, 419 P.2d 966 (1966) (witness's prejudicial testimony improper and not cured by admonitions to jury). Defendant argues that a reasonably competent defense attorney would have moved for a mistrial and points out that the case was closely contested and that Kiddney's improper testimony could easily have tipped the balance.

The state, however, contends that defense counsel's decision not to move for mistrial was a matter of trial tactics. In reviewing claims of ineffective assistance of counsel, the appellate court will not attempt to second guess tactics and strategy of trial counsel. *State v. Dean*, 105 N.M. 5, 727 P.2d 944 (Ct.App.1986).

■ The standard for ineffective assistance of counsel is whether defense counsel exercised the skill, judgment and diligence of a reasonably competent attorney. *State v. Orona*, 97 N.M. 232, 638 P.2d 1077 (1982); *State v. Talley*, 103 N.M. 33, 702 P.2d 353 (Ct.App.1985). Defendant bears the burden of showing both the incompetence of his attorney and proof of prejudice, and absent such a showing by defendant, counsel is presumed competent. *State v. Dean.* We do not believe that the trial counsel's failure to move for a mistrial rises to the level necessary to satisfy defendant's burden of showing both incompetence and prejudice. Instead, trial counsel elected to request an admonishment instruction. We have examined the full record and find that defendant's trial counsel vigorously acted on defendant's behalf. In order to establish a claim of ineffective assistance of counsel, defendant's trial must be shown to have been unreliable and as a result, the fact finder must have reached an unjust result. *State v. Duran*, 105 N.M. 231, 731 P.2d 374 (Ct.App.1986). Under the record before us, we find defendant's claim of ineffective assistance of counsel unpersuasive.

### III. *Other Issues.*

Defendant also raises three other issues pursuant to *State v. Franklin*, 78 N.M. 127, 428 P.2d 982 (1967), and *State v. Boyer*, 103 N.M. 655, 712 P.2d 1 (Ct.App.1985). Defendant argues that unauthorized contact occurred between the judge's secretary and the jury during their deliberations, requiring a reversal of his convictions. Defendant fails to indicate where this issue was preserved below and provides no factual explanation or record citation, argument or authority. We determine this issue is without merit. *See State v. Casteneda* (issues raised on appeal are deemed to be abandoned where appellant fails to cite authority or present argument).

■ Defendant also asserts that there was insufficient evidence to support each of his convictions. We have reviewed the evidence and testimony presented at trial and find the record contains substantial evidence on which the jury could find defendant guilty of the charges against him. On appeal a reviewing court views the evidence in the light most favorable to the verdict and resolves all conflicts in the evidence in favor of the verdict of the jury. *State v. Brown*, 100 N.M. 726, 676 P.2d 253 (1984). As shown by the record defendant's daughter who was fourteen years old at the time of trial, testified concerning the incident giving rise to the charges. Her testimony directly supports the findings of the jury.

Defendant's final point on appeal contends that he was denied due process by delay in obtaining funds to hire an expert witness. Defendant did not raise this issue at trial and fails to accompany this claim with any argument or authority or to indicate how the delay in fact prejudiced his case. We find this claim without merit.

The judgment and sentences are affirmed.

IT IS SO ORDERED.

APODACA, J., concurs.

HARTZ, J., specially concurs.

HARTZ, Judge (specially concurring).

I concur in the opinion of the court. In particular, I agree that Ms. Kiddney had sufficient experience to testify as an expert

concerning whether the child's conduct was consistent with that observed in victims of sexual abuse. I write separately, however, to emphasize that the opinion does not purport to decide a challenging evidentiary issue that will probably arise in other prosecutions for sexual abuse of children. The issue concerns the relevance of some of Ms. Kiddney's testimony and the propriety of some of the prosecutor's comments on that testimony. Because defense counsel failed to raise a sufficiently specific objection (perhaps for tactical reasons), the state had no opportunity to attempt to explain or remedy the possible defect. Therefore, we need not rule on this evidentiary question. Nevertheless, the topic merits discussion to prevent a misreading of our decision in this case.

To clarify the issue in question, it helps to understand in what way Ms. Kiddney's testimony was certainly relevant. In the opening statement for defendant, counsel contended that among the reasons the jury should doubt the child's testimony were her failure to report the alleged abuse to anyone in authority for fifteen months, her expression of a desire to return to her father in Albuquerque one month after the alleged abuse, and her having given different versions of the abuse story. Ms. Kiddney's experience with child victims of sexual abuse would qualify her to testify that such behavior, which would appear to most lay persons as being inconsistent with the child's having been a victim of sexual abuse, is common among such victims. Such "explanatory" testimony is appropriate. As Justice Roberts explained in her concurrence in *State v. Middleton*, 294 Or. 427, 440–41, 657 P.2d 1215, 1222 (1983):

> While jurors may be capable of personalizing the emotions of victims of physical assault generally, and of assessing witness credibility accordingly, tensions unique to the trauma experienced by a child sexually abused by a family member have remained largely unknown to the public. As the expert's testimony demonstrates the routine indicia of witness reliability—consistency, willingness to aid the prosecution, straightforward rendition of the facts—may, for good

reason, be lacking. As a result jurors may impose standards of normalcy on child victim/witnesses who consistently respond in distinctly abnormal fashion.

> Because the experts in this case have demonstrated that significant numbers of sexually abused children respond to the assault with the same patterns of "superficially bizarre behavior," * * * the testimony was properly admitted. [Footnote omitted.]

*Accord State v. Moran*, 151 Ariz. 378, 381, 728 P.2d 248, 251 (1986).

The state, however, may have had additional purposes for offering Ms. Kiddney's testimony—purposes that are, at the least, not clearly proper. Portions of the prosecutor's examination of Ms. Kiddney and of his final argument suggest that the state wished the jury to conclude from the expert's testimony that the child was a victim of sexual abuse because she fit the profile of such victims. In other words, the state wanted the jury, on the basis of Ms. Kiddney's testimony, to "diagnose" the child as a victim of sexual abuse. The question thus arises as to whether Ms. Kiddney's testimony was admissible for that purpose. If it was not, then her testimony would be inadmissible, except for those portions that were relevant for another purpose (such as the explanatory purpose discussed above).

Central to the analysis is the failure of Ms. Kiddney herself (or any other expert witness) to make the diagnosis. Perhaps, as the trial judge apparently concluded, she was not qualified by education, training, and experience to express a view that someone exhibiting the behavior of the child was probably a victim of sexual abuse. (This case does not present the question of whether such testimony—even by a highly trained expert—is inadmissible. *See State v. Moran* (similar testimony held inadmissible).) Rather than making a diagnosis, Ms. Kiddney testified that the behavior of the child was "consistent" with that of a victim of sexual abuse. The jury was then left to infer that the child was in fact a victim of sexual abuse.

In my view, the jury should not be permitted to draw that inference from such

testimony by Ms. Kiddney. The inference requires support from expert testimony actually making the "diagnosis" on the basis of the child's behavior. In other contexts testimony that certain symptoms are consistent with a particular diagnosis is not, standing alone, admissible to prove the diagnosis. For example, an "expert witness" might testify that having acute appendicitis is consistent with having a temperature of 99.0 degrees Fahrenheit, dandruff, and a sore wrist. Yet a special verdict that the individual had acute appendicitis could not stand if the above testimony were all the evidence with respect to the diagnosis of acute appendicitis. For a jury to rationally diagnose a condition on the basis of testimony that certain symptoms are consistent with the condition, the jury also needs expert testimony regarding how probable the condition would be if those symptoms were present. Thus, courts ordinarily do not permit juries to draw a conclusion regarding medical diagnosis or medical causation without expert testimony directly supporting the conclusion. Indeed, it is generally required that the expert medical witness testify to his or her conclusion to a "reasonable medical probability," or words of similar import. *See Poertner v. Swearingen*, 695 F.2d 435 (10th Cir.1982); *Zerr v. Trenkle*, 454 F.2d 1103 (10th Cir.1972). Similarly, I think it is questionable whether a jury should be permitted to make a "diagnosis" that a child is a "sexually-abused child" on the basis of expert testimony that goes no further than to say that the child's behavior was "consistent" with that of a sexually-abused child.

I recognize that there is a difference between medical diagnosis of appendicitis in a suit for, say, medical malpractice and "diagnosis" of a child as being sexually abused in a criminal prosecution for sexual abuse. Most importantly, in a prosecution for sexual abuse there would usually be direct testimony by the victim of such abuse. The verdict would therefore be supported by more than just the diagnosis of the child as a sexually-abused child. One might conclude that evidence that a child's behavior is consistent with being a sexually-abused child is relevant because it has a tendency to make the fact that the child was sexually abused by the defendant "more probable * * * than it would be without the evidence." SCRA 1986, 11–401. On the other hand, in the absence of expert testimony concerning how probative the "consistent behavior" is as to whether the child was in fact a victim of sexual abuse, the trial judge might well exclude the portion of the consistent-behavior testimony that was not admissible for "explanatory" purposes. Under SCRA 1986, Rule 11–403, relevant evidence may be excluded because of the "danger of unfair prejudice, confusion of the issues or misleading the jury." SCRA 1986, Rule 11–702 excludes expert testimony if it would not "assist the trier of fact to understand the evidence or to determine a fact in issue."

In summary, it was within the district court's discretion to find that Ms. Kiddney was qualified to testify that the child's behavior was consistent with that of victims of child sexual abuse. Also, such testimony, or at least some of it, was relevant as "explanatory" testimony to rebut defendant's contention that the child's behavior suggested that she had fabricated her accusation. On the other hand, some of the testimony—and some of the prosecution argument based on that testimony—apparently was intended solely to persuade the jury to "diagnose" the child as a victim of sexual abuse. If specific objection had been made to such testimony and argument, failure to sustain the objection might have been, on the record before us, an abuse of discretion. Because there was no objection, however, the state had no opportunity to cure any defect or to present evidence or argument supporting its actions. Moreover, defense counsel's failure to pose a specific objection may have been tactical. Defendant's brief-in-chief recites testimony that for a period of time after the alleged sexual abuse the child appeared very happy and well adjusted, made good grades, and was involved in school activities. Insofar as Ms. Kiddney's testimony could support a conclusion that such behavior was inconsistent with that of a victim of child sexual abuse, defendant may have

believed that Ms. Kiddney's testimony on those matters could be helpful. Defense counsel's objection to Ms. Kiddney's testimony may have been intentionally imprecise, because a more precise objection might have strengthened the argument for the admissibility of the testimony most damaging to defendant (the explanatory testimony) while leading to exclusion of evidence arguably helpful to defendant (the diagnosis testimony). Given these realistic possibilities, it would be inappropriate to reverse when no precise objection was made. *See* 1 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 103[07] (1988). *Cf. Moore v. United States*, 399 F.2d 318 (5th Cir.1968), *cert. denied*, 393 U.S. 1098, 89 S.Ct. 893, 21 L.Ed.2d 789 (1969) (explicit waiver of objection by trial counsel for tactical reasons).