

# In the
# Missouri Court of Appeals
# Western District

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | |
| | ) | |
| Respondent, | ) | WD78436 |
| | ) | |
| v. | ) | OPINION FILED: |
| | ) | December 27, 2016 |
| MARION CLYDE ELLIS, | ) | |
| | ) | |
| Appellant. | ) | |

**Appeal from the Circuit Court of Buchanan County, Missouri**
The Honorable Patrick K. Robb, Judge

Before Division One: Thomas H. Newton, Presiding Judge, Cynthia L. Martin, Judge
and Edward R. Ardini, Jr., Judge

Marion Clyde Ellis ("Ellis") appeals his convictions of statutory sodomy in the first

degree pursuant to section 566.062 and of the class B felony of child molestation in the

first degree pursuant to section 566.067. Ellis argues that the trial court erred in refusing

to admit his entire statement to the police after the State admitted an edited version of his

statement; in admitting expert testimony that Ellis claims improperly commented on his

alleged victim's credibility; and in refusing to order the release of certain school counseling

and medical records during discovery which could have been relevant on the issue of credibility. Finding no error, we affirm.

## Factual and Procedural Background

Ellis does not challenge the sufficiency of the evidence to support his convictions. Viewed in the light most favorable to the convictions,[1] the evidence at trial established the following:

M.H. ("Mother") had two daughters, V.W. (born in 2003) and M.W. (born in 2005). Mother met Ellis shortly after M.W. was born. Mother and Ellis married in 2008. While married, Ellis was very involved in caring for V.W. and M.W.

Mother and Ellis divorced in 2011. After the divorce, V.W. and M.W. occasionally spent time with Ellis, including overnight visits. During the 2013 school year, V.W. and M.H. spent weekends with Ellis on a regular basis. V.W. was beginning the fifth grade. Mother told Ellis that the girls needed to take showers if they were spending the weekend with him.

On February 26, 2014, V.W., who was then ten years of age, told friends at school that Ellis had been touching her inappropriately. The friends told Robert Miller ("Miller") that V.W. claimed she had been raped. Miller spoke privately with V.W. who reported "I don't like staying over there. He keeps touching me and I don't like it." V.W. told Miller she was referring to her "stepdad." Miller reported the conversation to his supervisor. The

---

[1]*State v. Lammers*, 479 S.W.3d 624, 632 (Mo. banc 2016) (holding that an appellate court "considers all evidence in the light most favorable to the verdict and grants the State all reasonable inferences").

2

school nurse, Jennifer Smith ("Smith"), and the acting principal, Amanda Saxton ("Saxton"), were told of V.W.'s reports.

Smith and Saxton met with V.W. V.W. reported that Ellis touched her private areas, got in the shower with her, and made her rub back and forth on him. V.W. also mentioned an incident that occurred on the couch, and reported that when she laid on the floor at night, Ellis would remove her bra and underwear and push her up against him. V.W. claimed that Ellis's conduct had been ongoing since she was five years old. V.W. said she had never told Mother because she was afraid Ellis would beat her up. The Division of Family Services ("Division") was contacted.

Division employees Taylor Goodson Beard ("Beard") and Brett Spitzer ("Spitzer") came to the school to meet with V.W. V.W. appeared nervous and asked Spitzer to leave the room. V.W. told Beard that two weeks earlier, Ellis got into the shower with her and made her touch his private area. V.W. claimed this had happened more than once.

Detective Quentin Abbott ("Det. Abbott") of the St. Joseph Police Department's family crimes unit received the report about V.W.'s allegations and set up an interview with V.W. at the Children's Advocacy Center. V.W. told Det. Abbott that Ellis had touched her on her private parts and on her chest with his hands under her clothes while she was trying to sleep in the living room. V.W. said that three weekends prior, Ellis came into the shower with her and rubbed her chest and the inside of her private parts with his hands. V.W. said that one week prior, Ellis laid down next to her on the floor as she tried to sleep and pulled her close and tried to put his hands on her chest, but she moved his hands to her belly.

3

V.W. claimed that Ellis's conduct began when she was five, and that Ellis told her to never tell Mother.

Ellis met voluntarily with Det. Abbott at the police station on April 4, 2014. His interview was videotaped, and lasted approximately one hour and twenty-one minutes. The jury, however, heard only fifty-eight minutes of Ellis's interview. In the edited videotaped interview, Ellis reported that during the period of time between August 2013 and late February 2014, Ellis would see that the girls were bathed if they stayed at his house. Ellis reported that the girls often came to his home filthy, and that they loved to take baths or showers at his house. Ellis reported that the girls had not been taught how to bathe themselves properly, and that he tried to educate them how to do so using a sponge and soap. Ellis said that on one occasion while teaching V.W. how to bathe herself properly, he brushed against her vaginal area, and apologized. Ellis reported that he always washed the girls' hair whenever they took a bath or a shower at his house, and would do so by reaching in from outside the bathtub. Ellis reported that on two or three occasions (with the last being before Christmas in 2013), V.W. had walked into the bathroom while he was showering and had gotten into the shower with him. On these occasions, Ellis was concerned, but did not want to over-react in front of V.W., so he would get out of the shower and dry off, and let V.W. continue with her shower. Ellis also reported that the girls would sometimes run through his house undressed or only partially dressed. Ellis

4

claimed that he spoke with Mother regarding his concerns about the girls' showing up at his house filthy, their lack of modesty, and about V.W. getting into the shower with him.[2]

In the edited version of the interview played for the jury, Ellis told Det. Abbott that he did not understand how V.W. turned something normal like helping the girls take baths into something sexual. Ellis expressed sorrow that he had not appreciated that V.W. was no longer a little child, but was instead a big child that he should have handled differently with respect to bathing. Ellis denied any inappropriate contact with V.W.

Mother set up counseling for V.W. at the Children's Advocacy Center with Susan Drake ("Drake"). V.W. told Drake that Ellis touched her vagina with his hands and that it hurt, and that this had happened more than once. V.W. said that when she was showering, Ellis would come into the bathroom and turn off the light before getting into the shower with her, and that he would wash her with a washcloth and touch her private parts.

Ellis was charged with first degree statutory sodomy based upon his touching of V.W.'s genitals with his hand in the living room (Count I); first degree statutory sodomy based upon his touching of V.W.'s genitals with his hand in the shower (Count II); and the class B felony of child molestation based upon his touching of V.W.'s breasts with his hand in the shower (Count III); with all conduct alleged to have occurred between August 1, 2013 and February 27, 2014.

Before Ellis's trial, the State filed a motion in limine generally seeking to exclude any reference to denials of wrongdoing by Ellis. In addressing the motion in limine, Ellis's

---

[2]Mother testified at trial that Ellis never had these discussions with her.

counsel argued that if the State intended to introduce any portion of Ellis's videotaped interview into evidence, Ellis would insist on the entire recording being admitted into evidence, including denials of wrongdoing by Ellis. The State advised that it had no intention of playing Ellis's videotaped interview at trial. However, the State argued that Ellis's admissions during the interview about being in the shower with V.W. and about touching V.W., albeit for the purpose of bathing, were inconsistent with Ellis's earlier statements to a Division employee. The trial court stated that Ellis's inconsistent statements would be admissible at trial, but that if the State used the videotaped interview to establish the inconsistent statements, Ellis would be allowed to admit the entire interview into evidence.[3]

At trial, the trial court revisited the subject of admission of the videotaped interview following voir dire and off-the-record discussions with counsel. The trial court explained that it had reviewed the entire videotaped interview "to deal with the objections from the State regarding the [interview]."[4] [Tr. 409] The trial court expressed its belief that "it would be better for the jury to actually see what the defendant stated and the circumstances surrounding his statement regarding relevant matters as opposed to Detective Abbott testifying to that." [Tr. 409] However, the trial court stated "there is [sic] a lot of

---

[3]At trial, the State did not call the Division employee with whom Ellis had spoken to testify, negating any need to use the videotaped interview to establish that Ellis had given inconsistent statements.

[4]Because the off-the-record discussions regarding the videotaped interview were not summarized on-the-record, the genesis for revisiting the subject of admission of the videotape is not entirely clear. It appears, however, based on the trial court's on-the-record comments, that the State decided to seek to admit portions of the videotaped interview into evidence, prompting Ellis to insist that the entire videotaped interview be played, consistent with the trial court's in limine ruling. This apparently led the State to register objections to specifically identified parts of the taped interview--roughly the first nineteen minutes, and two shorter segments appearing in other parts of the interview.

6

objectionable statements made by the defendant that don't need to be testified to, are not relevant, and so should be excluded." [Tr. 410] The trial court thus granted all but one portion of the State's specific objections to segments of the interview, and ruled that an edited version of the videotaped interview could be admitted into evidence by the State. Specifically, the trial court directed that the videotaped interview should begin at 10:19:20,[5] stop at 10:41:40, start again at 10:43:56, stop at 11:06:22, start again at 11:07:20, and play out to its conclusion. The effect of the trial court's order was to tailor the portion of Ellis's interview which the jury was permitted to see from one hour and twenty-one minutes to fifty-eight minutes.

During this same discussion, the trial court acknowledged Ellis's request to admit the entire videotaped interview into evidence. Ellis's counsel argued that the rule of completeness requires a defendant's entire statement to be admitted once the State introduces a part of the statement, even if the remaining portions of the statement are self-serving. The trial court held that the rule of completeness did not apply because Ellis's statement was not a confession, and because the excluded portions of the videotaped interview were "irrelevant" because they did not "add context to the relevant statement that is admissible." [Tr. 415-16] Ellis's counsel made an offer of proof of the unedited videotaped interview.[6] Ellis repeated his request to admit the entire videotape later during

---

[5]The timestamp references to the videotaped interview refer to the time of day. Ellis's interview with Det. Abbott on April 4, 2014 began at 9:59:51 a.m. and ended at 11:21:20 a.m. when Ellis and Det. Abbott exited the interview room.

[6]The edited version of the videotaped interview was marked and admitted into evidence as State's exhibit 8A. The unedited version of the videotaped interview was marked as State's exhibit 8, and was received in evidence solely in connection with Ellis's offer of proof.

7

trial, after Det. Abbott testified in the State's case-in-chief, and laid foundation for the videotaped interview. The trial court again denied Ellis's request.

The jury acquitted Ellis on Count I involving the alleged conduct in the living room, but found Ellis guilty on Counts II and III involving the alleged conduct in the shower. Ellis was sentenced to fifteen years' imprisonment on Count II and five years' imprisonment on Count III, with the sentences to run concurrently.

Ellis filed this timely appeal. Additional facts relevant to the issues on appeal are addressed as necessary.

## Analysis

Ellis raises three points on appeal. In his first point, Ellis claims that it was error to exclude the unedited version of his videotaped interview from evidence pursuant to the rule of completeness. In his second point, Ellis claims that it was error to admit certain testimony from expert witness Joyce Estes that commented on V.W.'s credibility. In his third point, Ellis argues that the trial court erroneously deprived him of discovery of school counseling and medical records which could have been relevant on the issue of V.W.'s credibility. We address the points in turn.

## Point One

Ellis complains in his first point on appeal that the trial court violated the rule of completeness when it overruled his request to admit the whole of his videotaped interview into evidence after the State was permitted to admit portions of the interview. Ellis argues that he "is entitled to a new trial, in which his *whole* statement, . . . not only the portion the State *wanted* the jury to hear, will be presented." [Appellant's Brief, p. 39] (emphasis in

8

original).  Ellis preserved this particular claim of error at trial, and by raising the same claim in his motion for new trial.

Our standard of review in addressing the admission or exclusion of evidence at trial is for abuse of discretion.  *State v. Madorie*, 156 S.W.3d 351, 355 (Mo. banc 2005) ("A trial court has broad discretion to admit or exclude evidence at trial.").  "[T]hat discretion is abused when a ruling is clearly against the logic of the circumstances and is so unreasonable as to indicate a lack of careful consideration."  *State v. Forrest*, 183 S.W.3d 218, 223 (Mo. banc 2006) (quoting *State v. Gonzales*, 153 S.W.3d 311, 312 (Mo. banc 2005)).  If an abuse of discretion is found, our role on direct appeal is to review "for prejudice, not mere error, and [we] will reverse only if the error was so prejudicial that it deprived the defendant of a fair trial."  *Id*. at 223-24 (quoting *State v. Middleton*, 995 S.W.2d 443, 452 (Mo. banc 1999)).

Our review to determine prejudice varies depending upon whether evidentiary error involves the admission or the exclusion of evidence in a criminal trial.

> Trial court error in the ***admission*** of evidence is prejudicial if the error so influenced the jury that, when considered with and balanced against all of the evidence properly admitted, there is a reasonable probability that the jury would have reached a different conclusion without the error.

*State v. Miller*, 372 S.W.3d 455, 472 (Mo. banc 2012) (emphasis added) (citing *State v. Walkup*, 220 S.W.3d 748, 757 (Mo. banc 2007)).  However, "the erroneous ***exclusion*** of evidence in a criminal case creates a rebuttable presumption of prejudice."  *Id*. (emphasis added) (citing *Walkup*, 220 S.W.3d at 757).  That is because "[a] defendant in a criminal case has a constitutional right to present a complete defense."  *Id*. (citing *Walkup*, 220

9

S.W.3d at 757 (citing *California v. Trombetta*, 467 U.S. 479, 485 (1984))). "The state may rebut this presumption [of prejudice] by proving that the error was harmless beyond a reasonable doubt." *Id.* (citing *Walkup*, 220 S.W.3d at 757); *see also State v. Schnelle*, 398 S.W.3d 37, 45 (Mo. App. W.D. 2013). "In assessing whether the exclusion of evidence was harmless beyond a reasonable doubt, the facts and circumstances of the particular case must be examined, including the nature of the charge, the evidence presented, and the role the excluded evidence would have played in the defense's theory." *State v. Sanders*, 126 S.W.3d 5, 23 (Mo. App. W.D. 2003) (quoting *Felder v. State*, 88 S.W.3d 909, 914 (Mo. App. S.D. 2002)). "The exclusion of evidence is harmless beyond a reasonable doubt where the excluded evidence is cumulative of other evidence which was admitted at trial." *Schnelle*, 398 S.W.3d at 45.

We therefore examine whether exclusion of Ellis's entire unedited videotaped interview was an abuse of discretion, and if so, whether the State has sustained its burden to rebut the presumption of prejudice by demonstrating that the error was harmless beyond a reasonable doubt. To resolve this issue, we first address the rule of completeness as applied to criminal confessions or admissions.

**A.      The rule of completeness as applied to confessions or admissions of a criminal defendant**

"The rule of completeness provides that 'where either party introduces part of an act, occurrence, or transaction, the opposing party is entitled to introduce or inquire into other

parts of the whole.'"[7]   *State v. Jackson*, 313 S.W.3d 206, 211 (Mo. App. E.D. 2010) (quoting *State ex rel. Kemper v. Vincent*, 191 S.W.3d 45, 50 (Mo. banc 2006)).   "This rule seeks to ensure that an exhibit is not admitted out of context."  *Id.* (citing *State v. Skillicorn*, 944 S.W.2d 877, 891 (Mo. banc 1997), *overruled on other grounds by Joy v. Morrison*, 254 S.W.3d 885 (Mo. banc 2008)).

The rule of completeness has two attributes.  The rule of completeness "only applies when the item sought to be introduced is part of a greater whole."  William A. Schroeder, 22 *Missouri Practice, Missouri Evidence*, section 106:1 (4th ed. 2012).  In addition, the rule of completeness only applies where "[t]he parts introduced to complete the whole . . . relate to the same subject matter" as that which has been admitted.  *Id.*

Though the rule of completeness is simply stated, its application to criminal confessions or admissions introduced in part by the State has been fraught with confusion, particularly with respect to application of the second attribute of the rule.  Some cases have suggested a "bright-line" principle of admissibility, such that "[i]f a confession is admitted into evidence, the whole of the confession is in evidence," as a matter of law.  *State v. Beatty*, 849 S.W.2d 56, 59 (Mo. App. W.D. 1993); *see also State v. Quinn*, 461 S.W.2d 812, 816 (Mo. 1970) ("There is no question that where part of a confession or admission is

---

[7]The rule of completeness is akin to, but distinguishable from, the rule of curative admissibility.  The rule of completeness permits the introduction of parts of the whole of an exhibit or conversation in order to avoid other properly admitted parts of the same exhibit or conversation from being interpreted by the fact-finder out of context.  The rule of curative admissibility permits the admission of otherwise inadmissible evidence because the door has been opened to do so by the other party's admission of improper evidence.  William A. Schroeder, 22 *Missouri Practice, Missouri Evidence*, section 106:1 (4th ed. 2012); *State v. Howard*, 564 S.W.2d 71, 75 (Mo. App. St. L. D. 1978) ("The rule [of curative admissibility] is based upon the fairness of permitting a party to cure the admission of improper evidence by his opponent" through the admission of otherwise inadmissible evidence) (citing 31A C.J.S. *Evidence* section 190, at 509 [now found in materially the same form at 31A C.J.S. *Evidence* section 353 (1989)]).

11

introduced by the state, the defendant is entitled to introduce the remainder, even though self-serving . . . ."); *State v. Easley*, 662 S.W.2d 248, 252 (Mo. banc 1983) (quoting *Quinn* for the aforesaid proposition); *State v. Martin*, 28 Mo. 530, 538 (1859) ("A party has a right to insist upon the whole of his statements going before a jury, if any portion of them is offered against him . . . .").

At the same time, other cases have held that the admissibility of omitted portions of a criminal confession or admission remains subject to determining whether the purpose of the rule of completeness is served, such that omitted portions must relate to the subject matter of the portions the State has introduced. *State v. Williams*, 448 S.W.2d 865, 868-69 (Mo. 1970) ("Where a witness has been cross-examined as to a part of a conversation [with a defendant] the whole thereof, to the extent that it relates to the same subject matter and concerns the specific matter opened up, may be elicited on redirect examination.") (quotation omitted); *State v. Perkins*, 92 S.W.2d 634, 638 (Mo. 1936) ("[I]t is . . . well settled that where declarations of the defendant are put in evidence against him he has a right to insist that the whole thereof *bearing on the matter under investigation* be presented to the jury.") (emphasis added); *State v. Sibley*, 207 S.W. 806, 808 (Mo. 1918) (holding no error occurred in excluding portion of statement offered by defendant because "[t]he rejected portion of the conversation in no manner explains or modifies that portion of the conversation" which came into evidence); *State v. Hodges*, 575 S.W.2d 769, 774 (Mo. App. K. C. D. 1978) ("The law . . .recognize[s] the right of a defendant to inquire about and place in evidence all additional parts of a statement which will tend to explain a partial excerpt which has first been introduced by the prosecution. . . . But to come within the

12

reason of this exception, the additional portion which is sought to be introduced must be reasonably related to and explanatory of the portion already admitted.").

Confusion on this point was resolved in *State v. Collier*, 892 S.W.2d 686 (Mo. App. W.D. 1994). In *Collier*, this court acknowledged the seemingly bright-line rule referred to in *Quinn* and *Easley*, noting that "when the State introduces part of a confession or admission into evidence, the defendant is authorized to introduce the remaining portion, although it may be self-serving." *Id*. at 695 (citing *Quinn*, 461 S.W.2d at 816; *Easley*, 662 S.W.2d at 252). *Collier* explained that this general principal of admissibility recognizes that "[a] confession . . . must be used in its entirety so that the person affected thereby may have the benefit of any exculpation that the whole statement may afford." *Id*. (quoting *Beatty*, 849 S.W.2d at 59 (quoting *State v. Clay*, 441 So.2d 1227, 1234 (La. App. 1983))).[8]

At the same time, *Collier* recognized that "[t]he purpose of the rule of completeness is to ensure that a statement is not admitted out of context." *Id*. Thus, the excluded portions of a defendant's confession or admission are not *per se* admissible, but must instead satisfy a threshold standard of relevance:

> *[R]elevant* exculpatory statements made during a confession are admissible if other portions of the confession are used by the prosecution. "The ancient rule . . . is that the prosecution has no right to introduce selected portions of a defendant's confession and exclude those **which tend to mitigate, justify, or excuse the offense charged**."

---

[8]It is worth noting that although *State v. Beatty*, 849 S.W.2d 56 (Mo. App. W.D. 1993), correctly quoted *State v. Clay*, 441 So.2d 1227 (La. App. 1983), *Beatty* neglected to point out that the language quoted from *Clay* is not a judicial holding, but is instead the language of a Louisiana statute, LSA-R.S. 15:450, which codifies as a rule of evidence that "[e]very confession, admission or declaration sought to be used against any one must be used in its entirety, so that the person to be affected thereby may have the benefit of any exculpation or explanation that the whole statement may afford." Missouri does not have a similar statute.

13

*Id.* (emphasis added) (quoting *Beatty*, 849 S.W.2d at 59 (quoting *Boggs v. Commonwealth*, 331 S.E.2d 407, 419 (Va. 1985))).

To reconcile the seemingly absolute right to admit the whole of a confession or admission alluded to in *Quinn* and *Easley* with the tempering effect on admissibility of the rule of completeness, *Collier* announced a scenario-specific template for applying the rule of completeness to criminal confessions or admissions admitted in part by the State. *Collier* held that although the State's introduction of part of a defendant's confession or admission will generally authorize the defendant to introduce the whole of the confession or admission, even if self-serving, the general rule of completeness "is violated only when admission of the statement in an edited form distorts the meaning of the statement or excludes information which is *substantially* exculpatory to declarant." *Id.* (emphasis in original) (quoting 23 C.J.S. *Criminal Law* section 885 (1989)).

*Collier's* scenario-specific template for applying the rule of completeness to criminal confessions or admissions has been embraced by our Supreme Court. In *State v. Skillicorn*, a defendant sought to introduce portions of a confession he claimed were substantially exculpatory. 944 S.W.2d 877, 891 (Mo. banc 1997).[9] The Supreme Court held that where a defendant seeks to introduce an omitted portion of a confession:

> The rule of completeness seeks to ensure that a statement is not admitted out of context. The rule is violated only when admission of the statement in an edited form distorts the meaning of the statement or excludes information that is substantially exculpatory to the declarant.

---

[9] *State v. Skillicorn*, 944 S.W.2d 877 (Mo. banc 1997), was modified on denial of rehearing on May 27, 1997, and was subsequently overruled on unrelated grounds by *Joy v. Morrison*, 254 S.W.3d 885 (Mo. banc 2008).

*Id.* (citing *Collier*, 892 S.W.2d at 695). In *State v. Williams*, our Supreme Court held that:

> When the State introduces part of a confession or admission into evidence, the defendant is authorized to introduce the remaining portion, although it may be self-serving. *State v. Collier*, 892 S.W.2d 686, 695 (Mo. App. W.D. 1994); *State v. Easley*, 662 S.W.2d 248, 252 (Mo. banc 1983).[10] The rule is violated only when admission of the statement in an edited form distorts the meaning of the statement or excludes information that is substantially exculpatory to the declarant. *State v. Skillicorn*, 944 S.W.2d 877, 891 (Mo. banc 1997).

97 S.W.3d 462, 468 (Mo. banc 2003). It is thus settled that where a defendant's confession or admission is in part introduced by the State, the defendant is not entitled to insist on introduction of the whole of the confession or admission as a matter of law. Rather:

> Where, the prosecution introduces a part of a confession or admission only, accused is entitled to prove the remainder or any part thereof which is explanatory of, or connected with, the part offered by the state, even though it is in his favor, but defendant cannot compel admission of the entire statement simply because the prosecution offers part of it.

23 C.J.S. *Criminal Law* section 885, at 95. The scenario-specific template announced in *Collier*, which was drawn verbatim from 23 C.J.S. *Criminal Law* section 885, is thus nothing more than a factually specific means of describing whether omitted parts of a confession are "explanatory of, or connected with, the part offered by the state." 23 C.J.S. *Criminal Law* section 885, at 95.

Thus, in its practical effect, *Collier*'s scenario-specific "rule of completeness" is indistinguishable from the generally stated rule of completeness. A defendant may introduce only those omitted portions of a confession or admission that are necessary to

---

[10]In *State v. Williams*, 97 S.W.3d 462 (Mo. banc 2003), the citation to *State v. Easley*, 662 S.W.2d 248 (Mo. banc 1983), signals that *Easley* can no longer be read (to the extent it ever could) to require admission of the whole of a defendant's confession or admission merely because the State introduces less than the whole.

15

ensure that the portions admitted by the State are not taken out of context.  *Skillicorn*, 944 S.W.2d at 891 ("The rule of completeness seeks to ensure that a statement is not admitted out of context.").  Any doubt on this point was resolved by *State ex rel. Kemper*, a case involving a criminal confession or admission that was decided after *Skillicorn* and *Williams*, where our Supreme Court held that the rule of completeness allows "a party [to] introduce evidence of the circumstances of a writing, statement, conversation, or deposition so the jury can have a complete picture of the contested evidence introduced by the adversary."  191 S.W.3d at 49-50 (citing William A. Schroeder, 22 *Missouri Practice, Missouri Evidence*, section 106:1 (2d ed. 1999)).

Because a defendant does not have an absolute right to insist on introduction of the whole of a confession or admission merely because a part has been introduced by the State, it follows that determining whether omitted portions of a confession or admission will yield distortion or exclude material that is substantially exculpatory to the portions introduced by the State remains a matter left to the discretion of the trial court.  *Collier,* 892 S.W.2d at 695-96 (holding that when danger of distortion or exclusions of substantially exculpatory information is not present "it is not an abuse of discretion to fail to require the production of the remainder [of the statement]") (quoting 23 C.J.S. *Criminal Law* section 885); *see also State v. Silvers*, 735 S.W.2d 393, 397 (Mo. App. S.D. 1987) ("What may be considered reasonably separable [from the whole of a conversation or statement] is left to the sound discretion of the trial court.") (citing *State v. Brown*, 584 S.W.2d 413, 415 (Mo. App. E.D. 1979)).

> Unduly prejudicial, or incompetent, or immaterial and irrelevant portions of a statement containing a confession or admission which do not relate to and explain the material and relevant portions need not be received in evidence.

23 C.J.S. *Criminal Law* section 885, at 96.

**B.** **The trial court did not abuse its discretion in denying Ellis's request to admit the whole of his videotaped interview**

The trial court denied Ellis's request to admit the whole of his videotaped interview first because Ellis did not confess during the interview. Though Ellis did not confess[11] to wrongdoing during the interview, he did make admissions,[12] as he placed himself with V.W. in the shower at the same time (though under different circumstances than those testified to by V.W.), and as he admitted to unintended contact with V.W.'s vaginal area while teaching V.W. how to bathe. *See Collier*, 892 S.W.2d at 695 (noting that defendant's statement placing himself at the scene of a murder, though not a confession, was an admission). The rule of completeness applies to both confessions and admissions. *Id.* (holding that "an admission . . . falls under [the] rule of completeness"). The trial court committed legal error when it denied Ellis's request to admit the entirety of his videotaped interview because his statement was not a confession.

However, the trial court also denied Ellis's request to admit the whole of his videotaped interview because the excluded portions of the video were "irrelevant" because "there is [sic] a lot of objectionable statements made by the defendant that don't need to be

---

[11]"A confession is: '[a] voluntary statement made by a person charged with the commission of a crime or misdemeanor, communicated to another person, wherein he acknowledges himself to be guilty of the offense charged, and discloses the circumstances of the act or the share and participation which he had in it.'" *State v. Collier*, 892 S.W.2d 686, 695 n.4 (Mo. App. W.D. 1994) (quoting Black's Law Dictionary 296 (6th ed. 1990)).

[12]"An admission is the statement or conduct of a party that tends to incriminate or connect [that party] with the crime charged . . . ." *Id.* (quoting *State v. Isa*, 850 S.W.2d 876, 894 (Mo. banc 1993)). "To qualify as an admission, a statement need not constitute an express acknowledgment of guilt." *Id.* (citing *Isa*, 850 S.W.2d at 894).

17

testified to, are not relevant, and so should be excluded" because the excluded portions were unnecessary to "add context to the relevant statement that is admissible." The trial court did not commit legal error in applying this standard to determine the admissibility of the whole of Ellis's statement. As we have explained, Ellis was not entitled to insist on admission of the whole of his statement merely because the State introduced a portion of the statement. Rather, the trial court possessed the discretion to exclude portions of the statement it deemed "[u]nduly prejudicial, or incompetent, or immaterial and irrelevant . . . which do not relate to and explain the material and relevant portions" introduced by the State. 23 C.J.S. *Criminal Law* section 885, at 96.

At trial, Ellis never attempted to explain why all or any particular portion of the omitted segments of the videotaped interview needed to be introduced into evidence in order to avoid distortion or because they were substantially exculpatory to portions admitted by the State.

> Since defendant is responsible for specifying what additional portions of his statements should be admitted after the state has proffered some portions of his statement, the trial court need not sua sponte scrutinize those portions of the statements proffered by defendant in order to determine if there is a rationale for admission of those portions of the statements.

23 C.J.S. *Criminal Law* section 885, at 96. Because Ellis sought only the admission of the whole of his statement with no argument or showing that all or any part excluded violated the rule of completeness, the trial court did not abuse its discretion in denying Ellis's request.

On appeal, Ellis continues to claim reversible error as a result of the trial court's refusal to admit the whole of his videotaped interview. However, Ellis now identifies

18

specific topics addressed in the omitted portions of his videotaped interview which Ellis

claims required the whole of his interview to be introduced. Specifically, Ellis identifies

the following topics discussed in omitted portions of his interview:[13]

> (i) Ellis explained V.W.'s prior exposure to sexual abuse allegations which might explain why she misconstrued his bathing of her as sexual [Appellant's Brief, pp. 29, 33, 35]

> (ii) Ellis explained why he engaged in the practice of assisting V.W. with bathing which could have prevented the jury from viewing his behavior as inappropriate [Appellant's Brief, p. 33]

> (iii) Ellis explained his relationship with V.W. and described V.W.'s behavioral issues which could have made her prone to imagining injustices [Appellant's Brief, p. 35]

> (iv) Ellis explained that he was aware of V.W.'s allegations at the time of his interview which offered context to the information he volunteered about showering with V.W. [Appellant's Brief, pp. 34, 35]

> (v) Ellis denied showing V.W. pornography which responded to a part of her report to the Division [Appellant's Brief, pp. 35-36].[14]

There are several problems with Ellis's argument.

First, Ellis never identified these or any other topics when urging admission of the

whole of his interview with the trial court. And Ellis never argued to the trial court why

---

[13]We afford discussion only to those topics specifically identified by Ellis which are coupled with a developed argument regarding distortion or the exclusion of substantially exculpatory evidence. We afford no discussion to Ellis's summary mention of other topics excluded from the edited videotaped interview which are not coupled with a developed argument regarding distortion or the exclusion of substantially exculpatory evidence. Ellis's summary mention of excluded topics without a developed argument explaining how the excluded topic yielded distortion or resulted in the exclusion of information substantially exculpatory to portions of the interview introduced by the State preserves nothing for our review. "Claims of error without supporting argument preserve nothing for appellate review . . . ." *Lasker v. Johnson*, 123 S.W.3d 283, 287 (Mo. App. W.D. 2003).

[14]In his Brief and again in his Reply Brief, Ellis also argued that a portion of his videotaped interview at the end was omitted where, after saying he was "sorry," Ellis explained that he was sorry because he had failed to appreciate that V.W. had become a "big girl," and that he needed to conform his bathing practices with her accordingly. After oral argument, Ellis conceded in a letter to the court that this allegation was mistaken, as the edited and unedited versions of the interview are exactly the same in this respect. We therefore need not address this abandoned allegation.

19

the exclusion of these or any other topics addressed in the videotaped interview would yield distortion or were substantially exculpatory to portions admitted by the State. Instead, Ellis argued only generally that he was entitled to admit the whole of his interview because the State had admitted a part. "When the trial court rules properly on admissibility of evidence at the time, a claim of error on another ground advanced for the first time on appeal will not be considered." *State v. Winfield*, 5 S.W.3d 505, 515 (Mo. banc 1999) (citing *State v. Spica*, 389 S.W.2d 35, 54 (Mo. 1965)). "The defendant is bound by the arguments made and the issues raised at trial and may not raise new and totally different arguments on appeal." *Id*. (citing *State v. Ward*, 782 S.W.2d 725, 731 (Mo. App. E.D. 1989)). Ellis did not preserve for our review the specific arguments supporting admission of omitted portions of his interview that he now raises on appeal. *See id*.

Second, the five topics identified above have been extracted following this court's generous read of the argument portion of Ellis's Brief, and are not all captured by Ellis's point relied on. Ellis's point relied on is limited to addressing whether the edited form of the videotaped interview "omitted substantial reasons [Ellis] gave [Det. Abbott] for why V.W. would have lied or misunderstood his benign actions, as well as his regret that he failed to recognize that V.W. no longer was a little girl." The latter of these topics has been appropriately abandoned by Ellis as a basis for claiming error.[15] That leaves only the first topic identified in the point relied on--a topic which is, at best, implicated by only the first and third of the five topics listed above. "The argument [portion of an appellant's brief]

---

[15]*See supra* note 14.

shall be limited to those errors included in the 'Points Relied On." Rule 84.04(e). "Issues raised in the argument portion of a brief but not in the point relied on are not preserved for appeal." *State v. Fields*, 480 S.W.3d 446, 454 n.3 (Mo. App. W.D. 2016) (quoting *State v. Karr*, 968 S.W.2d 712, 717 (Mo. App. W.D. 1998)).

Third, even had Ellis preserved the specific arguments now raised on appeal by raising them with the trial court, and by expressly referencing them in his point relied on, we would not find that the trial court abused its discretion in denying Ellis's request to admit the whole of his videotaped interview. Ellis does not explain why the topics identified would have required admission of the whole of his videotaped interview, as opposed only to the discrete segments implicated by the identified topics. Yet, Ellis continues to maintain on appeal that the whole of his videotaped interview should have been admitted. [Appellant's Brief, p. 39]

Finally, even if we assume that Ellis desires relief not sought by his Brief--reversal of his conviction with instructions to add discrete, omitted segments to his edited videotaped interview--we would nonetheless be unwilling to conclude that the trial court abused its discretion in omitting the discrete topics Ellis now identifies on appeal.

Ellis first contends that it was error to exclude his discussions regarding V.W.'s prior exposure to sexual abuse allegations, as that might have explained how V.W. misconstrued bathing as sexual. Ellis is referring to the portions of his interview where he described Mother's report to him that she had been abused years before by her stepfather, and to Mother's report to him that Mother took V.W. to the hospital to be checked because Mother was concerned her stepfather had raped V.W. These topics were discussed during the

21

nineteen-minute segment excluded from the beginning of Ellis's interview, specifically between 10:10:05 and 10:10:52, and then again between 10:12:52 and 10:14:14, a total of two minutes and five seconds. Ellis's argument ignores that in addressing the decision to exclude certain portions of the videotaped interview, the trial court expressly held these very discussions were irrelevant and not necessary to afford context to the portions of the interview being admitted. And, Ellis's discussion about reports made to him by Mother about her stepfather's alleged abuse of Mother and V.W. is not substantially exculpatory, as it does not permit a reasonable inference that V.W. misconstrued innocent bathing activities with sexual conduct. Nor does Ellis's discussion about Mother's reports afford context to portions of Ellis's statement introduced by the State. The trial court did not abuse its discretion excluding these discussions from the edited version of Ellis's videotaped interview played for the jury.

Next, Ellis contends that it was error to exclude his discussions about why he engaged in the practice of assisting V.W. with bathing because without them, the jury may have viewed his behavior as inappropriate. In the edited version of the videotaped interview played for the jury, this topic is discussed by Ellis at length. We have studied the approximately twenty-three minutes of Ellis's interview excluded from evidence and find no other discussion explaining Ellis's practice of assisting V.W. with bathing. The premise of Ellis's complaint on appeal is not borne out by the record.

Ellis next contends that it was error to exclude his discussions about V.W.'s behavioral problems which could have been viewed by the jury as making V.W. prone to imagining injustices. The only specific behavioral problem Ellis discussed in his interview,

22

however, involved Mother's report to Ellis that V.W. falsely claimed that her lunch was being thrown away by a teacher at school. Ellis discussed this incident during the initial nineteen-minute segment that was excluded from evidence, specifically between 10:18:12 to 10:18:50, a thirty-eight second segment. Ellis's discussion during his interview was plainly second-hand, as he admitted no personal knowledge of the incident beyond what Mother reported to him. More to the point, Mother testified about this very incident at trial during Ellis's cross-examination. [Tr. 557-58] The trial court did not abuse its discretion by excluding Ellis's speculative discussion about Mother's report involving V.W. lying at school. And even were we to conclude that the trial court abused its discretion, which we do not, the exclusion of this thirty-eight second segment was not prejudicial to Ellis as a matter of law as it was cumulative of evidence the jury was otherwise permitted to hear. "The exclusion of evidence is harmless beyond a reasonable doubt where the excluded evidence is cumulative of other evidence which was admitted at trial." *Schnelle*, 398 S.W.3d at 45.

Next, Ellis contends that it was error to exclude the discussion explaining that he was aware of V.W.'s allegations at the time of his interview because this placed in context his volunteered statement that he had been in the shower with V.W. Ellis is necessarily referring to the portion of his interview between 10:03:56 to 10: 04:17, a twenty-one-second segment of the initial nineteen minutes excluded from evidence.[16] During that

---

[16]In the argument portion of his Brief, Ellis claims that discussions about his relationship with other children, including his daughter from another marriage; about V.W.'s prior exposure to sexual abuse; and about V.W.'s behavioral issues were also necessary to explain that he was aware of V.W.'s allegations at the time of the interview. [Appellant's Brief, p. 35] There is no connection between these topics and whether Ellis knew about V.W.'s allegations in advance of his interview with Det. Abbott.

23

twenty-one-second segment, Ellis explains that he wants to talk to Det. Abbott with respect to V.W.'s report, and that he is familiar with the details of V.W.'s report because he had already talked with Spitzer from the Division. We agree that this twenty-one-second segment of his interview was relevant and admissible pursuant to the rule of completeness, as it affords context for the entirety of Ellis's statement, and in particular for Ellis's volunteered admission about being in the shower with V.W. The relevance of the omitted twenty-one-second segment of Ellis's interview is empirically demonstrated by a question the jury submitted during deliberations:

> Was [Ellis] aware of the specific allegations or charges in specific areas of the house (shower versus living room) prior to the interview? Did he know why he was there for questioning?

Though we cannot predict how the answer to this question would have influenced the inferences the jury drew from Ellis's edited videotaped interview, it is undeniable that the answer to this question was important to the jury for some reason.

We cannot conclude, however, that exclusion of this twenty-one-second segment of the videotaped interview was an abuse of discretion. The trial court was aware that by excluding the first nineteen minutes of the videotaped interview, it was excluding limited portions that were admissible. In referring to that part of the interview, the trial court stated:

> There are parts of it that are admissible, but I believe that can be presented through Detective Abbott's testimony as part of the foundation for the playing of the video interview of the DVD and that you could certainly ask him questions about the circumstances surrounding how the statement took place, who was there, whether he advised him of his rights. All those types of things I think are proper questions.

24

[Tr. 414]  The trial court offered a solution to address this concern.  In discussing the procedure that would be used to play the edited videotape for the jury, the trial court suggested that the State first lay foundation for the videotape through Det. Abbott, and that Ellis's counsel then cross-examine Det. Abbott:

> [T]o lay a clear foundation of exactly what -- . . . How the circumstances surrounding the statement, if you want to add to what [the State] explains. And then we'll play the portion of the DVD the Court has deemed relevant. . . . I don't want either one of you getting into the substance of [what] the statements were. . . . So my thought is you're just talking about the circumstances-- . . . surrounding the statement.  You explain how it happens. [Then Ellis's counsel] gets up and if he thinks something is left out and he wants to make a clear picture of exactly the circumstances surrounding the giving of the statement, he can ask questions.  When that's all done-- . . . we'll play the DVD portion that the Court has deemed is relevant.

[Tr. 417-419]

Consistent with this discussion, when Det. Abbott was called to testify, the State asked foundational questions regarding the circumstances of Ellis's interview, including that Ellis had agreed to talk with Det. Abbott voluntarily, that Det. Abbott explained to Ellis that he was conducting an investigation and would like to talk to him, and that Det. Abbott informed Ellis of his Miranda rights.  [Tr. pp. 474-476]  Though Ellis's counsel objected when the State asked Det. Abbott on the stand to identify the Miranda waiver Ellis signed, counsel argued only that a verbal discussion of the waiver was on the tape and the tape was the "best evidence" of that discussion.  [Tr. p. 476]  The trial court overruled this objection, and Ellis claims no error on appeal in permitting Det. Abbott to testify about the Miranda waiver in lieu of the jury hearing this discussion as a part of the videotaped interview.

25

After the State completed its foundational inquiry of Det. Abbott, the trial court invited Ellis's counsel to cross-examine "regarding [the circumstances of the interview]" before the video was played, with the understanding that Ellis could cross-examine Det. Abbott on other substantive matters after the video was played. [Tr. p. 481] Ellis's counsel elected to "hold all of [his] cross-examination until the completion of the tape." [Tr. p. 481]. After the edited videotape was played, Ellis's counsel did, in fact, cross-examine Det. Abbott. However, he never inquired about the circumstances of Ellis's interview, and thus never asked whether Ellis was aware of V.W.'s reported allegations at the time of his interview, though the trial court plainly would have permitted inquiry about this particular circumstance of the interview.

The trial court did not abuse its discretion by excluding twenty-one seconds from Ellis's videotaped interview where Ellis explained his awareness of V.W.'s reported allegations. Though this omitted content was plainly admissible pursuant to the rule of completeness, the trial court offered the parties an effective, alternative means to admit the same evidence through foundational questions asked of Det. Abbott on the stand.

Finally, Ellis contends that he should have been permitted to introduce his denial that he ever showed V.W. pornography. Ellis is referring to the third omitted segment of the videotape, a fifty-eight-second segment from 11:06:22 to 11:07:20, where, in response to Det. Abbott asking if there was anything else Ellis could think of, Ellis volunteered that he could not understand where V.W. came up with this "porn thing," as he has never made the girls watch pornography. Ellis's argument ignores that in explaining the decision to omit this segment of the videotape, the trial court accurately observed that Ellis's

26

volunteered statement was not responsive to subject matters addressed in the edited portion of the tape admitted into evidence, an essential predicate to application of the rule of completeness. [Tr. 412-413] William A. Schroeder, 22 *Missouri Practice, Missouri Evidence*, section 106:1 (4th ed. 2012) (observing that the rule of completeness only applies where "[t]he parts introduced to complete the whole . . . relate to the same subject matter" as that which has been admitted).

It is true, as Ellis notes in his Brief, that Saxton (V.W.'s school principal), was permitted on direct examination, over Ellis's objection, to read from an incident report she prepared that V.W. told her she would "have to turn the TV off [at Ellis's house] so [M.W.] does not see. They kiss and take their clothes off." [Tr. 689-695] Ellis objected to this line of questioning, and argued it hinted at the pornography topic Ellis had discussed in his interview, and that the trial court had already ruled was not relevant. The trial court overruled the objection, after extended discussion, with the "understanding the State's not going to argue that it's evidence that he was requiring her to watch pornography." Ellis has not challenged this ruling on appeal. Nor did Ellis argue at trial that Saxton's testimony rendered the fifty-eight-second segment of his interview admissible pursuant to the rule of completeness. The trial court did not abuse its discretion by failing, after the State's direct examination of Saxton, to sua sponte revisit whether the rule of completeness required the admission of Ellis's denial about showing the girls' pornography.

Even had Ellis requested the trial court to revisit its rule of completeness determination regarding the pornography discussion, Saxton's testimony about what V.W. reported to her did not involve a statement by Ellis, and thus did not implicate the rule of

completeness.  *See* William A. Schroeder, 22 *Missouri Practice, Missouri Evidence*, section 106:1 (4th ed. 2012) (noting that the rule of completeness is implicated "when one party introduces evidence of a part of a writing, conversation, statement, or deposition, an opponent has a right to introduce evidence of, or inquire into, ***other relevant parts of that*** writing, conversation, statement, recorded statement, or deposition") (emphasis added); *see also State v. Yole*, 136 S.W.3d 175, 179 (Mo. App. W.D. 2004) (holding that rule of completeness did not apply where "statements made at the scene and the statement made at the police station were . . . distinct and not part of one confession") (citing *State v. Chambers*, 891 S.W.2d 93, 103 (Mo. banc 1994) (holding that statement to police made thirty-six hours after a different statement to police was not part of one confession and not admissible under the rule of completeness)).  Ellis argues no other basis for admitting his inadmissible, self-serving hearsay statement denying that he showed the girls pornography. *State v. Beishline*, 920 S.W.2d 622, 626-27 (Mo. App. W.D. 1996) (holding that as a general rule, "[a] defendant cannot create exculpatory evidence by introducing self-serving, hearsay statements" made by the defendant to another) (citing *State v. Sweet*, 796 S.W.2d 607, 614 (Mo. banc 1990)).[17]

In summary, none of the excluded topics specifically identified in Ellis's Brief support a finding that the trial court abused its discretion by violating the rule of completeness.  Our discussion of the excluded topics specifically identified in Ellis's Brief

---

[17]The rule of completeness permits the admission of otherwise inadmissible self-serving statements, assuming essential to avoid the admitted portion of a writing or conversation from being taken out of context, because such statements come "under the entire conversation exception to the hearsay rule."  *State v. Stevens*, 757 S.W.2d 229, 234 (Mo. App. E.D. 1988).

28

underscores, however, the fundamental flaw in Ellis's continued insistence on appeal that the trial court erred in refusing to admit the whole of his interview. The excluded topics specifically identified in Ellis's Brief total approximately four minutes and three seconds of the approximately twenty-three minutes excluded from Ellis's videotaped interview. Ellis has never explained why he is entitled by the rule of completeness to admit the whole of his videotaped interview when only limited portions are argued by him to be essential to avoid distortion or substantially exculpatory to parts of the interview admitted by the State.

Point One on appeal is denied.

### Point Two

In his second point on appeal, Ellis claims it was error to admit testimony from expert witness Joyce Estes ("Estes") that commented on V.W.'s credibility.

The State called Estes to testify as an expert witness on general behaviors and characteristics commonly found in victims of sexual abuse.

> In cases involving the sexual abuse of a child, there are typically two types of expert testimony that give rise to a challenge: general and particularized. General testimony describes a "generalization" of behaviors and other characteristics commonly found in those who have been the victims of sexual abuse. Particularized testimony is that testimony concerning a specific victim's credibility as to whether they have been abused. The trial court has broad discretion in admitting general testimony, but when particularized testimony is offered, it must be rejected because it usurps the decision-making function of the jury and, therefore, is inadmissible.

*State v. Churchill*, 98 S.W.3d 536, 539 (Mo. banc 2003) (citing *State v. Williams*, 858 S.W.2d 796, 798-99 (Mo. App. E.D. 2003)). These principles, which are uniquely applicable to sexual abuse cases, remain subject, however, to overarching principles

29

assisting courts on the admissibility of expert testimony. "Expert testimony should never be admitted unless it is clear that the jurors themselves are not capable, for want of experience or knowledge of the subject, to draw correct conclusions from the facts proved." *Williams*, 858 S.W.2d at 798 (citing *State v. Taylor*, 663 S.W.2d 235, 239 (Mo. banc 1984)). "[A]n expert may testify to his/her opinion on an ultimate issue in a criminal case . . . as long as the expert witness does not express an opinion as to whether the defendant is guilty of the charges." *Id.* (citing *Taylor*, 663 S.W.2d at 239). "Moreover, '[e]xpert opinion testimony is not admissible as it relates to credibility of witnesses.'" *Id.* (quoting *Taylor*, 663 S.W.2d at 239).

Here, Ellis complains about several aspects of Estes's trial testimony. Specifically, Ellis claims it was error to permit Estes to testify that: (i) "children do not lie hardly at all, very seldom, about child sexual abuse;" (ii) inconsistencies in a child's story of abuse do not mean the child is lying; (iii) the main reason children do not disclose sexual abuse is fear of what an "offender" will do to them; (iv) a child's feelings toward the "perpetrator" can play into how the child discloses abuse; and (v) as 90% of "victims" are abused by someone they know or care about, it is not unusual for the ""victim" to still love the "perpetrator." Our standard of review is for an abuse of discretion, as explained in connection with point one on appeal.

We address Ellis's last three complaints first. They collectively urge that it was error to permit Estes to use terms like "victim," "perpetrator," and "offender" during her testimony. Ellis argues that these terms "supplied improper verisimilitude on the issue of whether [Ellis] was guilty." [Appellant's Brief, p. 45 (quoting *Williams*, 858 S.W.2d at

30

801)] Ellis did not preserve a claim of error involving the use of these or similar terms during Estes's testimony as he never objected on this basis at trial. Though we are permitted to afford plain error review for issues that are not preserved, we do so sparingly. *State v. Mayes*, 63 S.W.3d 615, 633 (Mo. banc 2001). Even then, we first require error that is evident, obvious, and clear before assessing whether the claimed error resulted in a manifest injustice or a miscarriage of justice. *State v. Baumrak*, 280 S.W.3d 600, 607-08 (Mo. banc 2009).

Here, the offending references highlighted by Ellis occurred as a part of Estes's generalized testimony about behaviors and other characteristics commonly found in those who have been the victims of sexual abuse. At no time did Estes refer to V.W. as a "victim" or to Ellis as a "perpetrator" or "offender." Read in context, we cannot say that Estes's generalized testimony commented on Ellis's guilt, particularly as the offending labels were only sporadically employed by Estes. The trial court did not plainly error in failing to *sua sponte* address Estes's use of "labels" in connection with otherwise proper generalized testimony about behaviors and other characteristics commonly found in those who have been the victims of sexual abuse.

Ellis also complains that Estes testified that "children do not lie hardly at all, very seldom, about child sexual abuse." Though this is generalized testimony, Ellis correctly points out that regardless of its generalized form, the testimony was nonetheless improper as it commented on credibility. Nearly identical testimony was held to be inadmissible in *Williams*, where a doctor testified on ***direct*** examination that "very rarely do [sexually

31

abused children] lie," and that the "[i]ncidents of lying among children is very low, less than three percent." 858 S.W.2d at 801.

Here, however, the complained of testimony was elicited by Ellis's counsel on ***cross***-examination during a line of questioning that was itself a suspect attempt to elicit Estes's opinions on the subject of credibility, as counsel sought Estes's concession that children can and do lie, and will often twist stories when caught in a lie. When, during this line of testimony, Estes stated that sexually abused children hardly ever lie, Ellis did nothing to preserve a claim of error, or to attempt to remediate the error. More to the point, Ellis would have been hard pressed to complain about Estes's testimony as it appears to have been invited by the line of questioning employed during cross-examination. Ellis cannot take advantage of invited error to seek a reversal of his conviction. *See State v. Uka*, 25 S.W.3d 624, 626 (Mo. App. E.D. 2000).

Finally, Ellis complains that it was error to permit Estes to testify that inconsistencies in a child's story of abuse do not mean the child is lying. Ellis is referring to Estes's testimony during direct examination as follows:

> State: If a child tells one person one thing that happened and then he tells-- he or she tells another person another thing, then they go to counseling and they start talking about other things, ***does that mean they're lying about those things? If they're different things, does that mean they're lying based on your training and experience***?

> Ellis's Counsel: Your honor, I'm going to object to the form of the question. It's asking this witness in this case to commit to a fact that's not in evidence. It's way beyond the scope of what this witness is permitted to testify to and we would object on that basis.

32

(Emphasis added). The trial court overruled Ellis's objection, and the State restated the question:

> State: If a child tells one person-- you said sometimes they tell and they gauge their reaction and then they decide whether or not they can tell more. If they tell one person one thing and then they tell another person something different and they tell another person something different, ***does that mean because those are all different that they're lying***? Do you call these inconsistent?

> Estes: No, not necessarily. I mean, they could be inconsistent. But if the child is-- the main details are the same, the same offender, the same place more or less where it happened-- it could be different rooms because they've had different incidents. Child abuse very, very seldom is ever a one-time thing. It's usually-- like I said, they don't tell right away so it continues. It goes on. There's several times. They may talk to the counselor and she says, you know, something about "Well, tell me what happened," you know, and the child is remembering what happened in the living room. The next time they may go and they want to say something to mom and they say, "You know, mom, I remember when he did this to me in the bathroom." Now, those are not inconsistent statements. Those are just more details, more remembering and more coming out, more disclosures basically.

(Emphasis added).

Though Ellis's objection to this line of question was imprecise, we believe it was sufficient to preserve his claim of error on appeal. The second part of Ellis's objection, which complained that Estes's testimony exceeded its permissible scope, had been the subject of lengthy discussions with the trial court in connection with Ellis's motion in limine which sought to exclude Estes as a witness, and again at trial before Estes testified.[18]

---

[18]These discussions occurred on two occasions during trial. The first was when the State sought to admit Estes as its first witness, and the trial court sustained Ellis's objection to the timing of her testimony, because Estes's discussion of behavioral characteristics of a sexually abused child would only be relevant to characteristics exhibited by V.W., about which there was no evidence. The second was when Estes was recalled to testify later in the State's case-in-chief.

On each occasion, Ellis objected that Estes should not be permitted to testify to matters involving the credibility of witnesses generally, or V.W. specifically, and the trial court agreed, cautioning the State that Estes could not opine on matters of credibility, and should testify narrowly about generalized behaviors of sexual abuse victims that were relevant given V.W.'s behaviors.

Estes's testimony that sexual abuse victims often delay disclosure, and often disclose what has happened to them incrementally, was appropriate testimony describing generalized behaviors of sexual abuse victims that were relevant given V.W.'s behavior. Generalized testimony about behaviors exhibited by sexual abuse victims is admissible to "assist the jury's understanding of the behavior of sexually abused children, a subject beyond the knowledge of an ordinary juror." *Williams*, 858 S.W.2d at 799 (quoting *State v. Newman*, 784 P.2d 1006, 1009 (N.M. App. 1989)). However, Estes should not have been allowed to opine whether it means that a victim is or is not lying if a generalized behavior is exhibited. Such testimony, though generalized in form, plainly comments on credibility--a subject about which expert witnesses are prohibited from testifying. *Id.* at 798 (citing *State v. Taylor*, 663 S.W.2d at 239). General profile or behavioral characteristic evidence is not admissible "to prove that sexual abuse occurred." *Id.* at 799. In sexual abuse cases, expert witnesses are not allowed "to give their opinion of the accuracy, reliability or credibility of a particular witness; nor [are] they . . . allowed to give opinions with respect to the accuracy, reliability or truthfulness of witnesses of the same type under consideration." *Id.* at 800. Estes's testimony "with respect to the credibility or truthfulness of witnesses of the same type [as V.W.] invest[ed] 'scientific cachet' on the central issue

34

[of V.W.'s] credibility and should not [have] be[en] admitted." *Id*. The trial court abused its discretion in overruling Ellis's objection to the aforesaid questioning of Estes during the State's direct examination.

As previously noted, an abuse of discretion in the admission of evidence does not warrant reversal unless the error is prejudicial, gauged by whether "the error so influenced the jury that, when considered with and balanced against all of the evidence properly admitted, there is a reasonable probability that the jury would have reached a different conclusion without the error." *Miller*, 372 S.W.3d at 472 (citing *Walkup*, 220 S.W.3d at 757). Here, as was the case in *Churchill*, there was no physical evidence of sexual abuse, and the State's evidence of abuse consisted solely of V.W.'s inconsistent accounts of Ellis's conduct, rendering the likelihood that expert testimony bolstering V.W.'s credibility would be prejudicial. 98 S.W.3d at 539 n.8. However, unlike *Churchill*, in this case, Ellis's counsel employed a strategy during cross-examination that sought to discredit V.W.'s credibility by asking Estes to confirm that V.W.'s behaviors, though often seen with sexual abuse victims, did not prove that abuse actually occurred. Ellis was as guilty of using Estes to elicit improper expert testimony commenting on credibility as was the State. We cannot say, therefore, that the trial court's abuse of discretion in admitting Estes's objectionable testimony during the State's direct examination was so prejudicial as to require reversal.

Point Two on appeal is therefore denied.

**Point Three**

In his third point on appeal, Ellis argues that the trial court erroneously deprived him of discovery of school counseling and medical records which could have been relevant on the issue of V.W.'s credibility.

"[I]n reviewing a challenge to a trial court's decision to deny a motion for discovery [in a criminal case], appellate review is limited to a determination of 'whether the trial court abused its discretion in such a way as to result in fundamental unfairness.'" *State v. Mauchenheimer*, 342 S.W.3d 894, 896 (Mo. App. W.D. 2011) (quoting *State v. Tisius*, 92 S.W.3d 751, 762 (Mo. banc 2002)). "Fundamental unfairness occurs when there is 'a reasonable likelihood that denial of discovery affected the outcome of the trial.'" *Id*. at 896-97 (quoting *Tisius*, 92 S.W.3d at 762).

Ellis argues that although he was afforded discovery to some of V.W.'s school records, he was not permitted to discover, even pursuant to a protective order, other school and counseling records that could have been relevant on the issue of V.W.'s credibility. Specifically, Ellis argues that there was reason to believe that V.W. was suffering from dissociative events and had been diagnosed with post-traumatic stress disorder or another mental health disorder, and that the denied discovery would have confirmed these suspicions.

Assuming, *arguendo*, that the trial court erred by denying Ellis access to the requested documents (an issue we need not and do not decide), Ellis would be unable to demonstrate fundamental unfairness. Ellis acknowledges that his several attempts at trial to discuss V.W.'s behavioral problems and mental history were met with objections by the

State, all of which were sustained. [Appellant's Brief, p. 52] Ellis has not claimed error in the exclusion of this evidence. The denial of discovery on a subject about which no evidence was permitted to be introduced at trial is not fundamentally unfair.

Point Three on appeal is denied.

## Conclusion

The trial court's judgment of conviction and imposition of sentence is affirmed.

_____
Cynthia L. Martin, Judge

All concur