

# SUPREME COURT OF MISSOURI
## en banc

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | *Opinion issued April 30, 2024,* |
| | ) | *and modified on the Court's own* |
| Respondent, | ) | *motion July 9, 2024* |
| | ) | |
| v. | ) | No. SC100188 |
| | ) | |
| TROY JACKSON-BEY, | ) | |
| | ) | |
| Appellant. | ) | |

### APPEAL FROM THE CIRCUIT COURT OF THE CITY OF ST. LOUIS
### The Honorable Paula P. Bryant, Judge

Troy Jackson-Bey appeals from a judgment convicting him of five counts, including first-degree murder and first-degree assault. On appeal, Jackson-Bey challenges the circuit court's admission of surveillance video, the submission of the verdict director for first-degree assault, and the sufficiency of evidence supporting his convictions. The circuit court did not err in admitting the surveillance video, submitting the first-degree assault verdict director, and in finding there was sufficient evidence supporting Jackson-Bey's convictions. The judgment is affirmed.

### Background

A jury found Jackson-Bey guilty of five counts, including first-degree murder and first-degree assault, stemming from an altercation occurring in June 2020 at Husband and

Wife's residence. Viewed in the light most favorable to the verdict, the evidence adduced at trial included: Jackson-Bey and Husband got into an argument after Husband asked a woman to move her parked car forward so he could park his car in front of Husband and Wife's residence. The woman moved her car. Jackson-Bey, who was angry at Husband's request, approached Husband, who was exiting his car. The two argued. The argument appeared to end, and Jackson-Bey turned to walk away but then drew his gun and shot Husband.

Wife, who had been watching from the window, screamed and ran toward the door. Jackson-Bey forced his way through the door and fired his weapon. A struggle for control of the gun ensued between Wife and Jackson-Bey, during which Jackson-Bey fired his gun. Jackson-Bey again fired the gun between Wife's legs and then exited the residence.[1] Wife was not shot. Husband, who sustained six gunshot wounds, died.

Prior to trial, Jackson-Bey filed a motion in limine, seeking to exclude surveillance video taken from Husband and Wife's residence, arguing, under the rule of completeness, he was entitled to present the entire surveillance video of which the State had offered only portions. Opposing the motion, the State explained the video clips were created from a motion-detection system, such that the cameras did not record continuously but, instead, recorded in 30-second intervals.[2] The circuit court overruled the motion in limine. At trial, Wife testified she and Husband had a security system at their residence

---

[1] At trial, the State offered ballistic evidence, which included a bullet casing found in the residence and gunfire damage to the living room wall.
[2] The State sought to introduce five video clips, which were combined into one exhibit.

2

that included three cameras. She testified the system used a motion-detecting sensor, and the camera recorded in 30-second increments. She testified the security system recorded some of the incidents involved in the case. The circuit court, over Jackson-Bey's objection, admitted into evidence the surveillance video, which was shown to the jury.

The State submitted five counts to the jury. Relevant here, the verdict director for first-degree assault authorized the jury to convict Jackson-Bey of first-degree assault if it found, in part: "That on or about June 16, 2020, in the State of Missouri, [Jackson-Bey] attempted to kill or cause serious physical injury to [Wife] *by shooting her*."[3] (Emphasis added). Jackson-Bey did not object to the verdict director's language. During closing argument, Jackson-Bey argued the jury could not convict him of first-degree assault because there was no evidence he shot Wife. Also during closing argument, Jackson-Bey stated the first-degree murder instruction included: "The defendant was 18 years of age or older at the time of the offense."[4] He argued the State had not presented any evidence as to his age and the State had to prove this element beyond a reasonable doubt.

The jury found Jackson-Bey guilty of all five counts. Jackson-Bey appealed. This Court granted transfer after opinion by the court of appeals. Mo. Const. art. V, sec. 10.

## I.     *Surveillance Video*

The first issue before this Court is whether the circuit court erred in admitting the surveillance video into evidence.

---

[3] Also relevant here, the indictment charged Jackson-Bey with first-degree assault in that: "on or about June 16, 2020, … [he] *shot at* … [Wife] …." (Emphasis added).
[4] The first-degree murder instruction was patterned after MAI-CR 4th 414.02.

3

**Standard of Review**

This Court reviews a circuit court's admission or exclusion of evidence for abuse of discretion. *State v. Minor*, 648 S.W.3d 721, 735 (Mo. banc 2022). A circuit court abuses its discretion if its decision is "clearly against the logic of the circumstances then before the court and is so unreasonable and arbitrary that it shocks the sense of justice and indicates a lack of careful, deliberate consideration." *State v. Carpenter*, 605 S.W.3d 355, 359 (Mo. banc 2020) (internal quotations omitted). This Court will reverse only if the alleged circuit court error was so prejudicial it deprived the defendant of a fair trial. *Id.* at 370.

**Analysis**

Jackson-Bey contends the circuit court erred in admitting the surveillance video because, pursuant to the rule of completeness, he was entitled to introduce the entire surveillance video. Jackson-Bey's argument fails, however, because the rule of completeness does not apply.

The rule of completeness provides that, when "either party introduces part of an act, occurrence, or transaction, the opposing party is entitled to introduce or to inquire into other parts of the whole thereof in order to explain or rebut adverse inferences which might arise from the fragmentary or incomplete character of the evidence introduced by his adversary …." *State ex rel. Kemper v. Vincent*, 191 S.W.3d 45, 50 (Mo. banc 2006) (internal quotations omitted). "The rule of completeness only applies when the item sought to be introduced is part of a greater whole" and the "parts introduced to complete

4

the whole … relate to the same subject matter" as that previously admitted. *State v. Ellis*, 512 S.W.3d 816, 826 (Mo. App. 2016) (alteration in original) (internal quotations omitted).

Jackson-Bey has not shown the admitted video was "part of a greater whole." At trial, Wife testified the surveillance system recorded in 30-second increments upon motion detection. The record supports there was no single, continuous video, but, rather, each 30-second clip, itself, was a complete video, triggered by motion detection.

Jackson-Bey relies on *United States v. Yevakpor*, 419 F. Supp. 2d 242 (N.D.N.Y. 2006), in which the district court excluded the government's proffered evidence of three, one-minute video segments taken from surveillance recording of a border stop and search. *Id.* at 244-45. Relying on the rule of completeness, the district court observed that customs had failed to preserve the entire video and, in fact, gave an affirmative order to "only preserve the selected three minutes of tape …." *Id.* at 246. Jackson-Bey's reliance on *Yevakpor* is misplaced. It was undisputed in *Yevakpor* that the security system recorded continuously, such that the three video segments were fragments of a whole. *Id.* at 244. To the contrary, here, the evidence showed Husband and Wife's surveillance system did not record continuously. Consequently, there was no "greater whole" video of which the 30-second increments were a part. The rule of completeness does not apply, and the circuit court did not abuse its discretion in admitting the surveillance video. Jackson-Bey's claim fails.

5

## II. *Verdict Director for First-Degree Assault*

The next three issues involve the verdict director for first-degree assault. Each of Jackson-Bey's arguments hinges on the verdict director's language, which authorized the jury to find Jackson-Bey guilty of first-degree assault for *shooting* Wife, compared with the indictment's language, which charged him with first-degree assault when he *shot at* Wife.

### A. *Sufficiency of Evidence for First-Degree Assault*

Jackson-Bey argues the circuit court erred in overruling his motion for judgment of acquittal because there was insufficient evidence to convict him of first-degree assault.

### Standard of Review

When reviewing sufficiency of evidence claims, this Court does "not weigh the evidence but accept[s] as true all evidence tending to prove guilt together with all reasonable inferences that support the verdict and ignore all contrary evidence and inferences." *State v. Collins*, 648 S.W.3d 711, 718 (Mo. banc 2022) (internal quotations omitted). This Court considers "only whether there was sufficient evidence from which the trier of fact reasonably could have found the defendant guilty." *Id.* (internal quotations omitted).

### Analysis

Section 565.050.1, RSMo 2016, provides: "A person commits the offense of assault in the first degree if he or she attempts to kill or knowingly causes or attempts to cause serious physical injury to another person." Jackson-Bey does not argue there was insufficient evidence to permit a reasonable juror to find he attempted to kill or cause

6

serious physical injury to Wife. Rather, his "sufficiency" argument seizes on the verdict director's language, which asked the jury to find *he shot Wife*, compared with the indictment, which alleged he shot *at Wife*. Jackson-Bey argues the State failed to carry its burden to show he actually shot Wife, as she testified at trial she was not shot and there was no evidence she suffered a gunshot wound.

Sufficiency of evidence review, however, "does not rest on how the jury was instructed." *State v. Zetina-Torres*, 482 S.W.3d 801, 809 (Mo. banc 2016) (quoting *Musacchio v. United States*, 577 U.S. 237, 243 (2016)). Instead, this Court reviews "whether there is sufficient evidence to support the charged crime, based on the elements of the crime as set forth by statute and common law and the evidence adduced at trial." *State v. Brown*, 558 S.W.3d 105, 109 (Mo. App. 2019) (internal quotations omitted).

Wife testified Jackson-Bey forced his way into the residence and then shot his gun. She also testified Jackson-Bey again shot the gun as they struggled over the weapon. He fired the gun a third time in between Wife's legs. The State also introduced ballistic evidence, which included a bullet casing found in the residence and gunfire damage to the living room wall. Based on such evidence, the jury could have reasonably found Jackson-Bey attempted to kill or cause serious physical injury to Wife. Accordingly, there was sufficient evidence to support Jackson-Bey's first-degree assault conviction, and the circuit court did not err in overruling his motion for judgment of acquittal.

### B. *Circuit Court's Submission of First-Degree Assault Verdict Director*

Jackson-Bey further argues the circuit court plainly erred in submitting the verdict director for first-degree assault because the language required the jury to find he shot Wife, which was unsupported by the evidence. Additionally, Jackson-Bey contends the verdict-director language materially varied from the indictment thereby prejudicing him.

### Standard of Review

"Generally, this Court does not review unpreserved claims of error." *State v. Brandolese*, 601 S.W.3d 519, 525 (Mo. banc 2020). This Court, however, has discretion to review plain errors. Rule 30.20. Not every allegation of plain error warrants review. *Brandolese*, 601 S.W.3d at 526. This Court will decline plain error review "unless the claimed error facially establishes substantial grounds for believing that manifest injustice or miscarriage of justice has resulted." *Id.* (internal quotations omitted). Jackson-Bey bears the burden of showing manifest injustice entitling him to plain error review. *Id.*

### Analysis

Jackson-Bey seeks plain error review, as he did not object to the language in the verdict director for first-degree assault at trial or in is his motion for a new trial. The State contends Jackson-Bey waived plain error review, as, during closing argument, he emphasized the first-degree assault verdict director required a finding he shot Wife, as opposed to *shot at* Wife, and argued the State had not presented evidence Wife was shot. The State argues, then, Jackson-Bey clearly understood the instruction required a finding he shot Wife, as opposed to a finding he shot *at* her. The State posits Jackson-Bey

8

strategically did not object to the instruction so he could argue the evidence did not show he actually shot Wife. This Court agrees.

Plain error review applies "when no objection is made due to inadvertence or negligence." *State v. Johnson*, 284 S.W.3d 561, 582 (Mo. banc 2009) (internal quotations omitted). "Plain error review is waived when counsel has affirmatively acted in a manner precluding a finding that the failure to object was a product of inadvertence or negligence." *Id.* (internal quotations omitted). During closing argument, Jackson-Bey emphasized the issues with the language in the verdict director of which he now complains. Such actions preclude this Court from finding his failure to object was truly a product of inadvertence or negligence. Plain error review is waived.

### III. Age Is Not an Element of the Offense of First-Degree Murder

Jackson-Bey further argues age is an element of the offense of first-degree murder and, because the State failed to produce any evidence he was at least 18 years old when the offense occurred, there was insufficient evidence to support his murder conviction. For the reasons explained below, this Court concludes age is not an element of the offense of first-degree murder.

To place the issue in context, a brief history of the offense of first-degree murder is helpful. Currently, section 565.020.1, RSMo 2016, sets forth the offense of first-degree murder:

> A person commits the offense of murder in the first degree if he or she knowingly causes the death of another person after deliberation upon the matter.

9

As reflected in the statute, the elements of first-degree murder are that a person:

"(1) knowingly (2) caus[ed] the death of another person (3) after deliberation on the matter." *State v. Tisius*, 92 S.W.3d 751, 764 (Mo. banc 2002). First-degree murder has long been defined as any "willful, deliberate and premeditated killing."[5] In 1983, the legislature codified the present-day definition of first-degree murder in its current location. Section 565.020.1, RSMo Supp. 1983. The penalty for first-degree murder is found in section 565.020.2. Before 1990, it remained "either death or imprisonment without eligibility for probation or parole." Section 565.020.2, RSMo Supp. 1983. In 1990, without changing section 565.020.1, the legislature amended the statute such that an individual younger than 16 years of age at the time of the offense was ineligible for the death penalty.[6] Section 565.020.2, RSMo Supp. 1990. Then, in 2005 and 2012, respectively, the Supreme Court of the United States held the Eighth Amendment prohibits the execution of individuals who were younger than 18 years of age at the time of the offense and also prohibits mandatory life-without-parole sentences for juvenile offenders. *Miller v. Alabama*, 567 U.S. 460 (2012); *Roper*, 543 U.S. 55. Accordingly, in 2016, the legislature again amended section 565.020.2 to its current form:

> The offense of murder in the first degree is a class A felony, and, if a person is eighteen years of age or older at the time of the offense, the punishment shall be either death or imprisonment for life without eligibility for probation

---

[5] Sections 4448, 4450, RSMo 1909; sections 3230, 3232, RSMo 1919; sections 3982, 3984, RSMo 1929; sections 4376, 4378, RSMo 1939; sections 559.010, RSMo 1949; sections 559.010, 559.030, RSMo 1959; sections 559.010, 559.030, RSMo 1969.

[6] This statutory amendment reflects a response to the United States Supreme Court decision that the Eighth Amendment does not prohibit capital punishment for those who committed murder at the age of 16 years or older. *Stanford v. Kentucky*, 492 U.S. 361 (1989), *abrogated by Roper v. Simmons*, 543 U.S. 551 (2005).

or parole, or release except by act of the governor. If a person has not reached his or her eighteenth birthday at the time of the commission of the offense, the punishment shall be as provided under section 565.033.

In addition, the legislature passed section 565.033, which sets forth three possible sentences for offenders younger than the age of 18 at the time of the offense: life without eligibility for parole, life with eligibility for parole, and a term of 30 to 40 years. Viewing Missouri's first-degree murder statutory scheme in light of its historical context evidences the legislature's amendments did not change the crime of first-degree murder. Instead, responding to *Roper* and *Miller*, the legislature declared particular punishments are unavailable for juvenile offenders.

Nonetheless, Jackson-Bey, relying on *Alleyne v. United States*, 570 U.S. 99 (2013), argues age is an element of first-degree murder. In *Alleyne*, the Supreme Court of the United States held: "Any fact that, by law, increases the penalty for a crime is an 'element' that must be submitted to the jury and found beyond a reasonable doubt."[7] *Alleyne*, 92 S.W.3d at 103. At issue in *Alleyne* was a defendant's seven-year sentence for having "brandished" a firearm while "us[ing] or carr[ying] a firearm" "during and in relation to a crime of violence." *Id.* at 103-04. The jury found the defendant used or carried the firearm, which carried a five-year mandatory minimum sentence. *Id.* at 104. At sentencing, however, the judge found the defendant had brandished the firearm, and

---

[7] *Alleyne* expanded *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000), which held any fact increasing the penalty for a crime beyond the prescribed statutory *maximum* must be submitted to the jury and proved beyond a reasonable doubt. Specifically, *Alleyne* clarified that facts increasing a mandatory *minimum* sentence also must be submitted to the jury. *Alleyne*, 570 U.S. at 103.

thereby increased the defendant's mandatory minimum sentence to seven years. *Id.* The Supreme Court ultimately concluded: "because the fact of brandishing aggravates the legally prescribed range of allowable sentences, it constitutes an element of a separate, aggravated offense that must be found by the jury …." *Id.* at 115.

Jackson-Bey posits that, because the mandatory minimum punishment for first-degree murder increases if he was 18 at the time of the offense, his age must have been submitted to the jury and found beyond a reasonable doubt. Importantly, however, the Supreme Court has held "[p]roof of the nonexistence of all affirmative defenses has never been constitutionally required." *Patterson v. New York*, 432 U.S. 197, 208-10 (1977). Moreover, *Apprendi*, upon which *Alleyne* was based, specifically declined to overrule *Patterson*. *Apprendi*, 530 U.S. at 475. As *Patterson* set forth, a state may "choose[] to recognize a factor that mitigates the degree of criminality or punishment" without being required "to prove its nonexistence." *Patterson*, 432 U.S. at 209 (allowing a state to place the burden on the defendant to prove extreme emotional disturbance that would reduce an offense from murder to manslaughter); *see, e.g.*, *State v. Meacham*, 470 S.W.3d 744, 747-48 (Mo. banc 2015) (holding the defendant has the burden to prove the affirmative defense of inability to provide support for good cause in criminal nonsupport cases, and the state need not show the absence of the inability to provide support to secure a conviction).

Instead, states may place the burden on a defendant to prove certain affirmative defenses. Relevant here, intellectual disability is a categorical exception to the death

penalty.[8] *Atkins v. Virginia*, 536 U.S. 304 (2002). Intellectual disability, then, obviously impacts the available punishment for the offense of first-degree murder. The Supreme Court of the United States, however, has never held *Alleyne* and *Apprendi* require the state to prove beyond a reasonable doubt the absence of intellectual disability as an element of first-degree murder in securing a death sentence. So, this Court, citing 30 other states, has held the defendant has the burden to prove intellectual disability.[9] *State v. Johnson*, 244 S.W.3d 144, 150 n.3 (Mo. banc 2008). In *Johnson*, this Court interpreted section 565.030.4(1), which specified life imprisonment in lieu of death shall be assessed "[i]f the trier finds by a preponderance of the evidence that the defendant is [intellectually disabled]." *Id*. at 150 (first alteration in original). The Missouri legislature enacted section 565.030.4(1) in accordance with the standard set forth in *Atkins*, and this Court held the statute "necessarily implies that it is the defendant's burden, not the State's, to provide to a jury that he is [intellectually disabled]." *Id.*

---

[8] Intellectual disability is defined as:

> [A] condition involving substantial limitations in general functioning characterized by significantly subaverage intellectual functioning with continual extensive related deficits and limitations in two or more adaptive behaviors such as communication, self-care, home living, social skills, community use, self-direction, health and safety, functional academics, leisure and work, which conditions are manifested and documented before eighteen years of age.

Section 565.030.6.

[9] *See also State ex rel. Johnson v. Blair*, 628 S.W.3d 375, 388 (Mo. banc 2021) ("Intellectual disability is neither an element of the underlying crime nor an aggravating factor. Rather, intellectual disability concerns whether an offender is *eligible* for the death penalty.").

Age, as with intellectual disability, is a "characteristic[] of the offender" that categorically prohibits the death penalty. *Graham v. Florida*, 560 U.S. 48, 61 (2010). Indeed, the Supreme Court has equated youth and intellectual disability. *Roper*, 543 U.S. at 567 ("As in *Atkins,* the objective indicia of consensus in this case—the rejection of the juvenile death penalty in the majority of States; the infrequency of its use even where it remains on the books; and the consistency in the trend toward abolition of the practice— provide sufficient evidence that today our society views juveniles, in the words *Atkins* used respecting the [intellectually disabled], as categorically less culpable than the average criminal." (internal quotation omitted)). Age, as a defendant's characteristic mitigating culpability, creates an exception with respect to punishment. Accordingly, the legislature, as it did with intellectual disability, clearly never intended age to be an element of the offense of first-degree murder and to treat this mitigating factor as an aggravator that the State must prove beyond a reasonable doubt.[10] *C.f. State v. Agee*, 364 P.3d 971, 994-95 (Or. 2015) (rejecting a defendant's attempt to convert absence of intellectual disability into element state must prove beyond a reasonable doubt); *Franklin v. State*, 579 S.W.3d 382, 386-89 (Tex. Crim. App. 2019) (holding an age-based ineligibility claim akin to an intellectual-disability claim and, accordingly, defendant's

---

[10] Although section 565.020.2 specifically mitigates culpability or punishment for first-degree murder, there is nothing limiting Jackson-Bey's argument to this specific criminal offense. Age affects the culpability or punishment of every offense. *See* chapter 211. Had the legislature intended to make age an element of every offense, such a monumental change would have been both explicit and unmistakable. Accordingly, drawing such an inference from section 565.020.2 alone makes no sense, especially when the Court drew the opposite inference from section 565.030.4(1) with respect to intellectual disability.

14

age is not an element of capital murder); *Commonwealth v. Batts*, 163 A.3d 410, 478-79 (Pa. 2017) (holding a jury was not required to make a finding regarding a juvenile's eligibility to be sentenced to life without parole because a finding of a permanent incorrigibility "cannot be said to be an element of the crime committed; it is instead an immutable characteristic of the juvenile offender").

Instead, if Jackson-Bey disputed his age—which he did not—he bore the burden both to produce evidence and to convince the fact-finder by a preponderance of the evidence that he was under the age of 18. Because the State did not bear the burden to prove Jackson-Bey was 18 years or older, and Jackson-Bey did not produce any evidence he was younger than 18 years of age, it is of no consequence whether there was sufficient evidence of Jackson-Bey's age, and this Court need not address Jackson-Bey's sufficiency of the evidence claim related to his murder conviction. *Zetina-Torres*, 482 S.W.3d at 809 (quoting *Musacchio*, 577 U.S. at 243) (The sufficiency of evidence "does not rest on how the jury was instructed."); *White v. Dir. of Revenue*, 321 S.W.3d 298, 305 (Mo. banc 2010) ("Generally, the party not having the burden of proof on an issue need not offer any evidence concerning it." (internal quotation omitted)).[11]

---

[11] To the extent MAI-CR 4th 414.02 conflicts with this Court's holding, it is not binding and should no longer be followed.

**Conclusion**

The circuit court did not err in admitting the surveillance video or in submitting the verdict director for first-degree assault. Finally, there was sufficient evidence to support Jackson-Bey's convictions. The judgment is affirmed.

_____
Mary R. Russell, Chief Justice

All concur.